OPINION
On April 13, 1997, Patrolman Greg Seesholtz of the Lancaster Police Department stopped appellant, James Andrew Stoots, and cited him with driving while intoxicated in violation of Lancaster City Ordinances 331.01 (A) (1) and 333.01 (A) (3).[1]
On May 15, 1997, appellant filed a motion to suppress based upon an illegal stop. A hearing was held on August 11, 1997. At the conclusion of the hearing, the trial court denied said motion.
On September 16, 1997, appellant pled no contest. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to twenty days in jail, suspended in lieu of treatment and two years good behavior, suspended his driver's license for one hundred eighty days and imposed a two hundred fifty dollar fine plus court costs.
Appellant filed and notice of appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT-APPELLANT WHEN IT OVERRULED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION.
 I
Appellant claims the trial court erred in denying his motion to suppress. We agree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v.Klein (1991), 73 Ohio App.3d 486; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo
on appeal."
We begin our analysis by noting a police officer with reasonable suspicion of criminal activity based upon articulable facts may stop a vehicle and briefly detain its occupants for purposes of investigation. Terry v. Ohio (1968), 392 U.S. 1. As the Supreme Court of Ohio recognized in State v. Bobo (1988),37 Ohio St.3d 177, a night time stop in a "high crime" or drug area coupled with other behavior, although not criminal, is sufficient to rise to the level of reasonable suspicion. However, a stop in a high crime area without any other factors is insufficient to pass a Terry test. State v. Carter (1994), 69 Ohio St.3d 59. In determining whether an objective and particularized suspicion existed, we must review the totality of the circumstances. Statev. Andrews (1991), 57 Ohio St.3d 86.
Appellant argues the concession by appellee, the State of Ohio, that Patrolman Seesholtz did not observe a traffic offense (Appellant's Brief at 4) is determinative of a Terry violation.
On April 13, 1997, Patrolman Seesholtz was on patrol performing routine business checks at approximately 1:00 A.M. T. at 2. Patrolman Seesholtz testified to his observations in a narrative form as follows:
 A. Uh, the first time I observed Mr. Stoots' vehicle it was pulling over towards the curb. It would stay over for a couple of seconds and then it would pull back out. It did this about three or four times, uh, going northbound on Broad Street. It made a right turn on to Walnut Street, which at that time I followed him making a right turn on to Walnut. Uh, shortly after he pulled on to Walnut Street though, he pulled over to the curb and shut his headlights off and at that time I told myself, well, he must have made it home and I just went on by at that time. Approximately ten minutes later, I made another loop around the downtown area, which is the area of town that I was patrolling that night. Uh, I again saw Mr. Stoots' vehicle. Again, it was going northbound on Broad Street, uh, heading toward the Broad and Columbus intersection. At that time I pulled in behind his vehicle again. He turned on to the lot of Macioci's garage, which is a business I known to be closed since approximately 5:00 p.m. that afternoon. Uh, as he pulled on to the lot, I pulled on to the lot behind him. He pulled in, pulled his nose up to the side of the garage, approximately 50 foot inside the parking lot. At that time, I hit my flashers and initiated contact with the driver to find out what he was doing on the lot of the business.
* * *
Q. Uh, was this vehicle stopped at any point?
 A. Uh, I can't say that it actually came to a full stop. He pulled up there and as soon as he did, I hit my overhead lights and probably, you know, he might of stopped because I hit my overhead lights. I can't say that he was stopped prior to that.
T. at 3-4 and 7, respectively.
At the conclusion of the hearing, the trial court found sufficient articulable facts to support the stop:
 In this case, in this particular case, um, uh, Patrolman Seesholtz, having had several contacts with the vehicle, which really in and of itself I don't think presents reasonable articulable suspicion, um, the fact that it pulls over and turns it lights out. Those are things that driver's don't normally do. Um, but the fact that it pulled into, um, a private business lot at 1:00 a.m. in the morning, um, when the business is closed and even though the officer didn't know, for all he knew it was Bob Macioci of Macioci's Garage, uh, coming to check on something or do whatever, but nonetheless, I find that the officer had a reasonable and he articulated the reason he stopped. He wanted to find out what, what stopped the vehicle, he wanted to find out, um, basically what business this person had at 1:00 a.m. in the morning on a private business lot pulling up next to the building. Um, I think taken with the overall circumstances, the fact that he, again, while the first contact he had with him is not sufficient articulable suspicion, but with all the contact he had with the vehicle, it gives rise to some reasonable suspicious activity.
T. at 53-54.
We disagree with this analysis. There was no testimony of the area being a high crime area or of any recent break-ins at Macioci's, the business parking lot wherein appellant was stopped. Further, appellant's driving pattern may have been unusual but was not criminal in nature and was separated by a lapse of time. We find the evidence does not support a justifiable stop because there is no testimony of articulable facts giving rise to a reasonable suspicion of criminal activity.
The sole assignment of error is denied.
The judgment of the Lancaster Municipal Court of Fairfield County, Ohio is hereby reversed. The sentence is vacated and the case is dismissed.
By Farmer, P.J., Hoffman, J. and Reader, J. concur.
 JUDGMENT ENTRY
CASE NO. 97 CA 00065
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Lancaster Municipal Court of Fairfield County, Ohio is hereby reversed. The sentence is vacated and the case is dismissed.
[1] These ordinances are equivalent to R.C. 4511.19(A)(1) and R.C. 4511.19(A)(3).