OPINION
Defendant-appellant James Nichols appeals his conviction and sentence in the Massillon Municipal Court on one count of operating a motor vehicle without a valid driver's license, in violation of R.C. 4507.02(A)(1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
After a traffic stop by a police officer in Brewster, Ohio, on February 5, 1997, appellant was charged with driving under suspension, in violation of R.C. 4507.02(D)(2). At his arraignment on February 7, 1997, appellant entered a plea of not guilty. On February 21, 1997, appellant filed a Motion to Suppress/Dismiss. The trial court conducted a hearing relative to the motion on March 31, 1997.
During the motion hearing, Sgt. Harry Porter of the Brewster Police Department testified, while on routine patrol during the afternoon of February 5, 1997, he was traveling northbound on South Wabash Avenue in the Village of Brewster, when he approached a gray van traveling southbound on the same road. Initially, Sgt. Porter noticed the van did not display a front registration plate. As the two vehicles passed, the officer and the driver looked directly at each other. After his cruiser completely cleared the length of the van, Sgt. Porter checked for the rear registration of the vehicle and saw an indiscernible 30 day temporary tag. The officer also noticed the taillight on the rear driver's side was "knocked out".
Thereafter, the officer turned his cruiser around in order to follow the vehicle. By the time Sgt. Porter maneuvered his cruiser into a southbound direction, the van had turned onto 7th Street. As the officer waited at a red traffic signal, he observed the van pull into an adjacent parking lot. Sgt. Porter turned onto 7th Street and drove passed the parked vehicle. At that time, the officer noticed the driver was sitting in the front passenger's seat. Sgt. Porter observed the van from a distance of several blocks for approximately 10 to 15 minutes, during which time he checked the vehicle's registration. Thereafter, the van, which was now being driven by a female, passed by the cruiser. After the van had driven by him approximately 1000 yards, the officer activated his overhead lights and initiated a traffic stop.
Sgt. Porter approached the driver and informed her of the broken rear taillight. Upon the officer's request, the driver, who was identified as Kathy Dattavio, produced a valid driver's license. Sgt. Porter then asked the passenger to produce his driver's license. Initially, the passenger stated he was not driving. However, upon learning Sgt. Porter had witnessed him driving the van a few minutes earlier, the passenger admitted he was driving and that his license was suspended. Appellant was identified as the passenger. Ultimately, appellant was charged with driving under suspension, in violation of R.C. 4507.02(B)(1).
Kathy Dattavio, appellant's sister, also testified at the motion hearing. Dattavio stated she was working the 6:30 a.m. to 3:30 p.m. shift at the Brewster Dairy on February 5, 1997. Because her own automobile was unavailable on that day, she arranged to have appellant pick her up from work. Regarding the traffic stop, she testified Sgt. Porter informed her he had pulled her over for a broken taillight. She stated she produced her license, registration, and insurance upon the officer's request. She recalled Sgt. Porter, thereafter, asked appellant for his license. She testified appellant initially told Sgt. Porter he was not driving, but ultimately admitted to the officer he was, in fact, driving and was doing so under a suspended license.
During the direct examination of Kathy Dattavio, the trial court informed the parties it had arrived at a decision regarding the validity of the stop. The State completed its direct examination of Dattavio. Appellant's trial counsel did not conduct a cross-examination of the witness, but did present a closing statement. The State presented a rebuttal, during which the State's attorney apologized to the trial court and the witnesses for the "waste of time". Thereafter, the trial court overruled appellant's motion to suppress and scheduled a plea hearing for April 29, 1997.
During the plea hearing on April 29, 1997, the trial courtsua sponte amended the charge from driving under suspension to no operator's license. Appellant changed his plea to no contest and the trial court entered a finding of guilty. The trial court sentenced appellant to 90 days in jail and imposed a $100 fine plus court costs. The court suspended the jail time conditioned upon appellant's paying the fine and showing proof of a valid driver's license to the trial court by July 1, 1997.
It is from this conviction and sentence appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AND/OR DISMISS THE CHARGES AGAINST DEFENDANT-APPELLANT IN VIOLATION OF DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHTS.
 II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT RULED AGAINST DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AND/OR DISMISS.
 III. THE TRIAL COURT ERRED IN FAILING TO PROVIDE FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AND/OR DISMISS.
 IV. THE TRIAL COURT ERRED IN DEMANDING PAYMENT BY DEFENDANT-APPELLANT OF HIS FINES AND COURT COSTS WHILE A STAY OF EXECUTION WAS IN EFFECT.
 V. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DETERMINING THAT THERE WAS NO PROOF OF FINANCIAL RESPONSIBILITY SHOWN BY DEFENDANT-APPELLANT.
 I
In his first assignment of error, appellant maintains the trial court violated his constitutional rights by overruling his motion to suppress and/or dismiss the charges. Specifically, appellant contends Sgt. Porter did not have probable cause or specific articulable facts which would justify his stop and investigation of the vehicle in which appellant was a passenger. As such, appellant asserts the statements he made relative to his driver's license were the product of an illegal stop.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See, State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error or law. See,State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; andState v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
In the instant appeal, appellant argues the trial court incorrectly decided the ultimate issue raised in his motion to suppress, to wit: whether Sgt. Porter's investigatory stop was founded upon a reasonable and articulable suspicion that appellant was involved in criminal activity. At the close of evidence at the motion hearing, the trial court found the stop was neither unreasonable nor illegal. Accordingly, this Court must make an independent determination, without deference to the trial court's conclusion, of whether Sgt. Porter had a reasonable suspicion, based upon specific and articulable facts, that criminal behavior had occurred or was eminent.
Under Terry v. Ohio (1968), 392 U.S. 1, a law enforcement officer may initiate an investigatory stop of a person when the officer has a reasonable suspicion of criminal activity. To justify such a stop, the seizing officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the officer's suspicion of criminal activity. Id. at 20.
According to the State, the basis for the officer's stop was the broken taillight. The State contends the lack of a front license plate and appellant's behavior provided Sgt. Porter with additional reasons to stop and detain appellant. We shall address each reason independently.
The trial court found the officer was justified in stopping the van due to the taillight violation. R.C. 4513.05 and 4513.071
require vehicles to be equipped with at least one taillight and at least one stop light.
R.C. 4513.05 provides:
 Every motor vehicle, * * * shall be equipped with at least one tail light mounted on the rear which, when lighted, shall emit a red light visible from a distance of five hundred feet to the rear * * *
R.C. 4513.071 provides:
 All motor vehicles when operated upon a highway shall be equipped with at least one stop light mounted on the rear of the vehicle which shall be actuated upon application of the service brake, and which may be incorporated with other rear lights. Such stop lights when actuated shall emit a red light visible from a distance of five hundred feet to the rear * * *
These statutes clearly provide that motor vehicles need only have one operating taillight and one operating stop light in order to be in conformity with the law. Sgt. Porter testified the driver's side taillight of the gray van was "knocked out". The State did not present any testimony regarding the color of the light emitted from either taillight. This evidence, standing alone, and in light of the aforementioned statutes, did not provide the arresting officer with the requisite reasonable suspicion with which to stop appellant. State v. Miller (May 29, 1996), Ashland App. No. 95-COA-01137, unreported (Citation omitted). See also, State v. Vannest (Dec. 15, 1995), Athens App. No. 94CA1645, unreported.
Having determined the broken taillight did not provide Sgt. Porter with the requisite reasonable suspicion with which to effectuate the traffic stop, we now address whether the lack of the front license plate provided the officer with a proper basis to stop and detain appellant.
In State v. Chatton (1984), 11 Ohio St.3d 59, the Ohio Supreme Court concluded:
 [W]here a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. As a result, any evidence seized upon a subsequent search of the passenger compartment of the vehicle is inadmissible under the Fourth Amendment to the United States Constitution.
 Id. at 63.
In Chatton, a police officer stopped the appellee's vehicle upon noticing the vehicle displayed neither front nor rear license plates. Id. at 59. Upon reaching the vehicle, the police officer observed a temporary license placard lying on the rear deck of the vehicle directly beneath the rear window. Id. The officer continued to the driver's side of the car and asked the appellee to produce his driver's license. Id. Upon conducting a computer check of the validity of the license, the officer learned the license was suspended. Id.
Ultimately, the officer placed the appellee under arrest for driving under suspension. Id. During a search of the passenger compartment of the vehicle, the officer discovered a loaded revolver underneath the driver's seat. Id.
The appellee was indicted for carrying a concealed weapon, in violation of R.C. 2923.12. Id. The appellee filed a motion to suppress evidence of the gun, alleging the search of his vehicle was unlawful. Id. at 59-60. The trial court overruled the motion. Id. at 60. The Court of Appeals for Cuyahoga County reversed. Id. The Supreme Court found, upon seeing the temporary tag, the police officer no longer maintained a reasonable suspicion that the appellee's vehicle was not properly licensed or registered, and; therefore, the officer was no longer justified in further detaining the appellee and demanding production of his driver's license. Id. at 63.
In the instant appeal, while traveling northbound on South Wabash Avenue during a routine patrol of the area, Sgt. Porter observed a gray van traveling southbound on the same road. The officer noticed the van did not display a front license plate. After his cruiser cleared the distance of the van, the officer turned and looked back at the vehicle in order to ascertain whether it bore appropriate registration. Sgt. Porter then saw a 30-day temporary tag. Once Sgt. Porter observed the valid temporary tag, he no longer had a valid basis upon which to stop appellant. Accordingly, the initial suspicion that the vehicle did not display both front and rear license plates, once extinguished, could no longer serve as a basis upon which to stop appellant's vehicle.
Lastly, we must determine whether appellant's behavior provided Sgt. Porter with reasonable and articulable suspicion to warrant stopping and detaining appellant. The State maintains appellant's glance as he traveled by Sgt. Porter coupled with his switching to the passenger seat after he had parked the van created a reasonable suspicion about appellant and the status of his operator's license. Although these two actions, when taken together, may create a "hunch," we find such behavior provides an insufficient basis upon which to stop a vehicle.
Because we found, supra, the officer did not have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior had occurred or was imminent, we find the stop of appellant and the vehicle was illegal. As a result, the statements made by appellant relative to the status of his driver's license were the product of an illegal stop and constitute inadmissible evidence. Accordingly, we find the trial court erred in overruling appellant's motion to suppress.
Appellant's first assignment of error is sustained.
 II, III, IV V
In light of our disposition of appellant's first assignment of error, we find appellant's second, third, fourth, and fifth assignments of error to be moot.
The judgment of the Massillon Municipal Court is reversed and the cause is remanded for further proceedings in accordance with law and consistent with this opinion.
By: Hoffman, J., Farmer, P.J. and Gwin, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Massillon Municipal Court is reversed and remanded back to the trial court for further proceedings in accordance with this opinion and the law. Costs assessed to appellee.