OPINION
Defendant-Appellant, James Taylor ("appellant"), appeals from the judgment of conviction and sentence entered upon his no contest plea to one count of possession of cocaine, a violation of R.C. Section 2925.11(A). Appellant assigns as error:
I
 THE TRIAL COURT ERRED WHEN OVERRULING APPELLANT'S MOTION TO SUPPRESS.
On February 3, 1998, at approximately 8:45 p.m., Canton Police Officer James Mayers was on foot patrol in the 500 block of Fifth Street N.W. in the City of Canton. The officer indicated that this area has a high amount of drug acitivity and prostitution.
While on patrol, Officer Mayers observed appellant standing with the aid of a cane in front of a bar known as "Bob's Place." It appeared that appellant was engaged in a type of "exchange" with one of the other three or four persons standing in front of the bar. Although he could not see what was being exchanged, the officer testified that the hand movements between appellant and the other individual were consistent with a drug transaction. Incidentally, earlier in the week, residents in the area informed Officer Mayers that a man who used a cane was supplying prostitutes with crack cocaine in this area.
After observing appellant in front of the bar for ten to fifteen minutes, Officer Mayers observed appellant walk to the intersection of Fifth Street and McKinley Avenue N.W. and begin speaking to a woman. It appeared to the officer that appellant and the woman were in a verbal argument. As Officer Mayers approached, appellant and the woman began walking separate ways. The officer yelled to appellant "what's going on here" and appellant stopped and said "nothing, just a little argument." Officer Mayers continued to approach appellant and observed a number of men stopping to watch. The officer then told appellant that he wanted to speak to him but first needed to check him for weapons.
During the pat down search, Officer Mayers felt a cellophane bag in appellant's right front jeans pocket. The officer testified that the bag was easy to feel and he also felt a course, rock type substance in it. The officer explained that he had previously felt such items before during pat down searches and knew the feeling was consistent with a bag of "crack-cocaine." Immediately, upon feeling this bag, the officer pulled the cellophane bag from appellant's pocket and saw that it indeed contained what appeared to be crack cocaine.
It is from these facts that appellant apparently requested a motion to supress all evidence obtained from the stop and search of appellant.[1] The trial court overruled appellant's motion to suppress and appellant entered a plea of no contest to the crime charged.
We now turn to appellant's sole assignment of error.
 I
Appellant claims the trial court erred in denying his motion to suppress. Appellant challenges the pat down search under Terryv. Ohio (1968) 392 U.S. 1 and the search of appellant's pocket and the removal of an item under Minnesota v. Dickerson (1993)508 U.S. 366. We disagree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are again the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v.Klein (1991), 73 Ohio App.3d 485; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, 1663, ". . . as general matter determinations of reasonable suspicion and probable cause should be reviewed de novo
on appeal."
Appellant argues the trial court should have suppressed the evidence because the evidence resulted from an unlaw warrantless stop, search and seizure.
The trial court found based upon the totality of the circumstances, the officer's training and experience, the officer's minimal detention, and a pat down search were lawful. By judgment entry filed March 12, 1998 the trial court also found the officer had immediate knowledge of contraband in appellant's pocket and the "plain feel" doctrine applied.
THE STOP
 In Terry, United States Supreme Court sanctioned investigatory stops made by police when the stops are supported by articulable facts and circumstances giving rise to reasonable suspicion. The Ohio Supreme Court extrapolated the Terry rule to incorporate a "totality of the circumstances" test, State v. Bobo (1988), 37 Ohio St.3d 177, `through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training, ` State v. Freeman (1980), 64 Ohio St.2d 291, 295, quoting United States v. Hall
(1976), 174 U.S. App. D.C. 13, at 15, `who must react to events as they unfold.' State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
We concur with the trial court's analysis that there existed specific articulable facts to warrant a suspicion of criminal activity and a minimal detention. The area where the stop occurred was a high crime/drug activity area of the city, (T. at 6) where drug activity and weapons go hand in hand. T. at 7. The officer was aware that complaints had been made to police about a large black man with a cane who was supplying drugs to prostitutes. T. at 10. The officer observed appellant standing in a doorway for approximately ten to fifteen minutes involved in hand transactions which appeared to the officer to be drug transactions. T. at 11. Appellant became involved with a female in an oral disagreement. T. at 11. It was at that time the officer decided to approach and see what the problem was. As the officer approached, the parties separated. T. at 13. The officer then stopped appellant and questioned him concerning the argument. T. at 14.
Based upon the fact it was 8:45 p.m., the high drug activity area, the report of a person similar to appellant dealing drugs, the observed activity and the verbal altercation between appellant and the female, we find the requirements of Terry, Id. have been satisfied.
THE SEARCH
 Under Terry, an officer is permitted to conduct a search for weapons:
 `[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a pat down search `to determine whether the person is in fact carrying a weapon.' 392 U.S., at 24, 88 S.Ct., at 1881. `The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . .' Adams, supra, at 146, 92 S.Ct., at 1923. Rather, a protective search — permitted without a warrant and on the basis of reasonable suspicion less than probable cause — must be strictly `limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' Citations omitted.
The officer testified that drug transactions and weapons are common ingredients, that he was alone on patrol and surrounded by appellant and two other individuals standing to his back. T. at 15. The officer asked to pat appellant down for weapons and appellant assented. T. at 16. The officer described the pat down as follows:
 A. And as I'm coming down the pants, I feel, um, the bag, you can feel a baggy, at which time down, laying against the bottom of the bag, also laying against the bottom of the pocket, run down through and you, ran my hands over the, ah, evidence.
 Q. Do you recall, when you do a pat down, do you literally pat somebody back and forth?
 A. Yes, I just go through the pockets, you know, check `em, go through and check the, ah, exterior. If there is anything, the bulges, um, the feels to be like a razor. Ah, box cutters are pretty, pretty popular these days of being carried, razor blades.
 Q. And what was the first thing that you felt that there was a suspicion?
 A. I felt what appeared to be a, a plastic, plastic as in like a baggy.
Q. What did that feel like to you?
A. Ah, just like a cellophane type thing. Ah —
Q. And that was on the interior of his pocket?
A. Yes. It was in the right, front pants pocket.
* * *
A. Cellophane or baggies is pretty easy to recognize.
 Q. And you indicated you went further down on the baggy and felt something else?
 A. Yes. The baggy — at this point I just continued down. Ah, the baggy was laying at the bottom of the pocket, at which time you can, you could feel the substance inside of it.
Q. What did you feel inside?
 A. And it's, it's a small rock, ah, coarse substance. You know, and laying like in a row, across the bottom of the pocket.
 Q. Have you felt that sensation before during pat downs as an officer?
A. Yes, I have.
 Q. In your experience what have those things turned out to be?
 A. Ah, I've experienced the fact that it's been crack cocaine.
 Q. And based on, based on your experience and the circumstances at that point, what did you believe you were feeling at that time?
A. Crack cocaine.
T. at 17, 18, 19.
The Minnesota court at 375-376 held the following:
 If a police officer lawfully pats down a suspect's out clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
 When such `touch' detection is done, the officer must `have probable cause to believe that the item is contraband before seizing it * * *.' Minnesota at 376. As a result, trial courts are required to determine if the facts presented lead to the conclusion the item's incriminating character is immediately apparent.
The officer indicated the feel of the cellophane and its contents are one touch. T. at 33. Based upon the testimony that there was a need for a pat down search for the officer's safety and the feel of the contraband as being immediately recognizable as "crack," we find the trial court did not err in denying the motion to suppress.
Assignment of Error I is overruled.
The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, P.J., Gwin, J. and Hoffman, J. concur.
[1] A review of the record indicates no written motion to suppress was filed by appellant.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.