On May 27, 1998, appellant, Raymond Withers, was charged with operating his motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and (A)(3). The results of appellant's BAC Datamaster test was .122.
On June 17, 1998, appellant filed a motion to suppress his BAC test claiming a violation of Ohio Adm. Code 3701-53-02(B) which requires the operator to "observe subject for twenty (20) minutes prior to testing to prevent oral intake of any material." Appellant claimed he had a peppermint candy and a partial denture plate in his mouth prior to testing. A hearing was held on July 17, 1998. By judgment entry filed July 21, 1998, the trial court denied said motion.
A jury trial commenced on November 9, 1998. The jury found appellant not guilty of R.C. 4511.19(A)(1) but guilty of R.C.4511.19(A)(3). By judgment entry filed November 13, 1998, the trial court sentenced appellant to thirty days in jail, twenty-seven days suspended, and imposed a $400 fine plus court costs and a one year license suspension.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED DEFENDANT-APPELLANTS MOTION TO SUPPRESS AND DEFENDANT'S MOTION TO RECONSIDER, WHEREIN DEFENDANT-APPELLANT HAD ALLEGED AND PROVED THAT THE STATE OF OHIO DID NOT PROVE COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH REGULATIONS WHICH REQUIRE THAT A SUBJECT WHO IS GOING TO BE TESTED ON A B.A.C. VERIFIER BREATHALYZER UNIT BE OBSERVED FOR TWENTY (20) MINUTES PRIOR TO TESTING TO PREVENT ORAL INTAKE OF ANY MATERIAL.
II
 THE TRIAL COURT ERRED BY NOT PERMITTING DR. CRAIG A. SUTHEIMER TO TESTIFY AT TRIAL THAT:
A. ORAL INTAKE IS PUTTING ANYTHING IN YOUR MOUTH.
B. ANYTHING INCLUDES DENTURES.
 C. IF DENTURES ARE IN THE SUBJECTS MOUTH THEN RULE 3701-53-02(B) OF THE OHIO ADMINISTRATE CODE HAS NOT BEEN COMPLIED WITH.
III
 THE TRIAL COURT ERRED WHEN IT BARRED DEFENDANT FROM RAISING OR CHALLENGING THE WEIGHT OF THE EVIDENCE BASED UPON NONCOMPLIANCE WITH RULE 3701-53-02(B) AFTER THE TRIAL COURT RULED SAID RULE HAD BEEN COMPLIED WITH AS A MATTER OF LAW.
 I
Appellant claims the trial court erred in denying his motion to suppress. We disagree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are again the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; Statev. Klein (1991), 73 Ohio App.3d 485; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. Statev. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
Appellant claims the state failed to establish it had complied with Ohio Adm. Code 3701-53-02(B) which requires the operator of a BAC unit to observe the test subject for twenty minutes prior to testing to prevent the oral intake of any material. In support, appellant claims this court's opinion inState v. Karns (July 21, 1997), Fairfield App. No. 97CA00002, unreported, is on point. In Karns, we found a violation of Ohio Adm. Code 3701-53-02(B) because the subject had gum in her mouth during the twenty minute observation period.
In the case sub judice, no testimony was given. Instead, appellant and the state stipulated to the fact issues involved relative to Ohio Adm. Code 3701-53-02(B) as follows:
 4. The Defendant was transported to the Granville Highway Patrol Post and submitted to a breath test on BAC Datamaster serial #921073. Prior to the test and more than twenty (20) minutes prior to the test, the Defendant removed a partial dental plate from his mouth, showed the dental plate to the officer, and then replaced the partial dental plate inside Defendant's mouth. The partial dental plate has four (4) false teeth, is made of metal (except for the false teeth), has five (5) metal rings which are fitted over his teeth to help hold the partial dental plate in position and has two (2) recessed cup shaped areas, where the Defendant's gums fit down into the partial plate. These cup shaped areas tend to trap and collect food particles, liquid and debris and Defendant would testify that there was such trapped food particles, liquid and debris and Defendant would testify that there was trapped food particles, liquid and debris in his partial plate at the time in question. The partial plate was in the Defendant's mouth at the time the breath test was administered. The breath test result was .122 and Defendant was then cited for operating with a prohibited breath concentration in violation in violation of Section 4511.19(A)(3) of the Ohio Revised Code.
By judgment entry filed July 21, 1998, the trial court specifically found the replacing of appellant's dental plate into his mouth did not constitute intake. The trial court held there is no violation of Ohio Adm. Code 3701-53-02(B) when a denture plate is in a mouth during the twenty minute observation period. We concur with this analysis and find intake does not encompass the replacement of a dental plate in one's mouth. We also find the Karns decision is not controlling. In Karns, we found gum chewing to constitute "intake":
 In the instant appeal, the fact that appellant was chewing gum raises an interesting question as to whether there is a difference between the terms 'intake' and 'ingest'. We believe the term 'intake' is broader than the term 'ingest'. One can intake something without necessarily ingesting it. The drafters of the regulations, promulgated by the Director of Health, chose the term 'intake' not 'ingest'. Because the act of chewing gum necessarily results in some of the ingredient(s) being combined with a person's saliva, which is ultimately swallowed and ingested, it is not necessary for this Court at this time to resolve the issue of whether the regulations prohibit ingestion or merely intake. However, even if the regulations prohibit ingestion as opposed to intake only, we find the act of chewing gum nevertheless results in some ingestion of its ingredients.
A dental plate is not a substance that produces ingredients nor is it ingested nor is it a substance foreign to one's mouth. At the suppression hearing, no evidence was presented on the effect of dental plates on the BAC unit nor any scientific evidence later argued by Dr. Craig Sutheimer, Deputy Director of the Ohio Department of Health, in his testimony and his proffer at trial.
Upon review, we find the trial court did not err in denying appellant's motion to suppress.
Assignment of Error I is denied.
 II, III
Appellant claims the trial court erred in limiting Dr. Sutheimer's testimony. We disagree.
The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987) 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
At trial, Dr. Sutheimer testified on the issue of contamination and the presence of appellant's dental plate as follows:
 Q. Okay. So, when we have a person at the legal limit of .10, that's one tenth of a gram,
A. Correct.
Q. Which is about three drops of alcohol —
A. Yes.
Q. In a fifty-five gallon drum?
A. That's correct.
Q. Of air?
A. Yes.
 Q. And that's why it becomes crucial that that sample not be contaminated?
 A. That is why that when the issue of contamination comes up and that we can't eliminate it, that it may impact on the result.
 Q. And in this case if there is testimony that Mr. Withers had a dental plate or a partial denture in his mouth, and if there's testimony that that partial denture constantly traps liquids and food particles, is it your opinion that that could affect the test?
 A. It is possible that that, if we do have a partial that has a habit of trapping and releasing materials it's possible there could be a small amount of material there. Some of it may not be alcohol but if some of it were by chance alcohol-laden, that it may impact on the result.
 Q. So when I blow into the machine I'm supposed to be bringing up deep lung air, but as it goes through my mouth, it could be picking up alcohol in my mouth trapped under the dentures?
 A. It is possible that some of the sample may have a small amount of alcohol that was a result of trapping in the mouth.
 Q. Well, if there's three drops in a fifty-five gallon drum, how may drops would there be in that little fifty cc?
A. Oh, gee, uhmm.
Q. Infinitesimally small?
A. Very, very small amount.
 Q. And I know I've asked this, but I want to make it clear to the jury cause this is a little confusing. The machine is not sampling two-hundred and ten liters of air? It's only sampling
—
A. No, it's, it is not.
 Q. Okay. And if the machine is taking a small sample, here's my question: Wouldn't the most minor, small, minuscule error get multiplied out time after time after time as we get to that grams per two-hundred and ten liters?
 A. A small, any error would be multiplied, a small error would be multiplied.
 Q. Over and over and over as we get to the two-hundred and ten liters because we start out with such a small sample to begin with?
A. That is correct.
 Q. We start out with something the size of that medicine bottle, we wind up with something the size of a fifty-five gallon drum.
A. That is correct.
 Q. So you're saying that when you have, when you multiply a small error it becomes a large error.
 A. Any time you multiply a, an error it will become bigger and bigger and as we're able to look very, very small magnify things we're able to see differences which to the naked eye wouldn't be a difference?
 Q. And, do you, can you say with a hundred per cent certainty that Mr. Withers' dental plate did not throw off this test?
 A. Uh, without having tested him a number of times I can not be sure that it did not affect the result.
* * *
 Q. So if one drop of beer were trapped in a person's dentures would that result in a two per cent error in the reading?
A. It could easily result —
Q. Two drops, four per cent?
 A. Probably. I'd have to go actually through the actual math, but a drop or so of beer could alter it and we would get an inaccurate result.
T. at 8-10 and 22, respectively.
Because the trial court ruled part of Dr. Sutheimer's testimony inadmissible, the following proffer was made:
 MR. ARNOLD: Thank you very much, Your Honor. Yes, you'd indicated earlier when we did a sidebar that I would be permitted to proffer some testimony on Dr. Sutheimer that you had ruled inadmissible. And in addition to the affidavit which was marked Defendant's Exhibit A, which was supported, which was attached to our Motion for Reconsideration, we would submit that he would testify to each and everything that he swore to under oath in his affidavit and, in addition, that he would have testified that oral intake is putting anything in your mouth, that he would have testified any material includes dentures and, most importantly, he would have testified that if dentures are in the mouth at the time that the breath sample is taken that Rule 3701-53-02(B) has not been complied with.
* * *
 MR. ARNOLD: My proffer in this case to these facts are dentures in the mouth are a violation of the rule and he would have further testified as he did in his affidavit, and you didn't permit him to testify, in the training of law enforcement officers that he has observed, law enforcement officers are trained they must have the subject remove any dentures or dental plates from their mouth twenty minutes prior to giving a breath sample.
Proffer T. at 2 and 3, respectively.
The mentioned affidavit of Dr. Sutheimer, Defendant's Exhibit A, included the following statements:
 5. In the training of law enforcement officers that I have observed, law enforcement officers are trained they must have the subject remove any dentures or dental plates from their mouth twenty (20) minutes prior to giving a breath sample;
 6. If a subject were to have dentures or a dental plate in his or her mouth at the time of the taking of the breath sample, the presence of the dentures or dental plate could effect the result. The breath sample may not be deep lung air as required by Rule 3701-53-02(B) of the Ohio Administrative Code.
In State v. Vega (1984), 12 Ohio St.3d 185, 189, the Supreme Court of Ohio set forth the type of evidence that can be used to rebut the presumption and the validity of BAC results as follows:
 Under the statute, the accused may introduce any other competent evidence bearing upon the question of whether he was under the influence of intoxicating liquor. Rebuttable evidence may include non-technical evidence of sobriety, such as a videotape or testimony by the accused or by witnesses concerning the accused's sobriety and the amount of consumption, as well as technical evidence, such as additional chemical tests and the completion of field sobriety tests. There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator. See, e.g., Cincinnati v. Sand (1975), 43 Ohio St.2d 79
[72 O.O.2d 44]. Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed. Accord State v. Brockway, supra, at 232. Since the presumption is rebuttable and the defendant may go forward with evidence, the '* * * [d]efendant cannot be heard to complain that the provisions of R.C. 4511.19 eliminate his presumption of innocence or hamper the presentation of his defense.' State v. Myers, supra, at 201.
The Vega court at 190 went on to hold "in light of R.C.4511.19, an accused may not make a general attack upon the reliability and validity of the breath testing instrument."
Upon review, we find the trial court's ruling to be consistent with the Vega standard. We find no abuse of discretion by the trial court.
Assignments of Error II and III are denied.
The judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.
By Farmer, J., Gwin, P.J. and Hoffman, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES