OPINION
{¶ 1} Defendant-appellant Byron Blake appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count of aggravated possession of drugs. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 23, 2002, the Delaware County Grand Jury indicted appellant on one count of aggravated possession of drugs (Oxycodone) in violation of R.C. 2925.11(A), a felony of the fifth degree. At his arraignment on September 23, 2002, appellant entered a plea of not guilty to the charge.
 {¶ 3} On October 23, 2002, appellant filed a Motion to Suppress. Appellant, in his motion, argued that there was no probable cause to arrest him and that, therefore, "evidence was illegally seized by officers of the Delaware Police Department and is the fruit of an unconstitutional search and seizure . . ." The following evidence was adduced at the November 25, 2002, suppression hearing.
 {¶ 4} Patrolman Juston Herning of the Delaware City Police Department was working the third shift on December 22, 2001. After receiving a call about a possible drunk driver in a semi-truck, the Patrolman observed a pick up truck make a right turn on red at a "no-turn on red" light. Transcript at 7. Patrolman Herning testified that he then got into the right lane to pursue the driver. The following is an excerpt from the Patrolman's testimony at the suppression hearing:
 {¶ 5} "I activated my beacons temporarily to get through the red light. He had turned right on River Street. I could hear his engine revving as he was making a right turn onto River Street. He was speeding up and it was difficult for me to keep up with him. So I had to turn on my beacons and my air horn to slow him down. I caught up to him on River Street and he made a left turn. I saw his lights jumping up and down as though he had run over something and I wasn't sure what it was at the time. I later found out it was a ditch that he had gone through. As he pulled off, it was a wooded area; it went all the way back in the back and he stopped the truck. The lights immediately shut off on the truck and he jumped out and started to walk away from me." Transcript at 7.
 {¶ 6} Patrolman Herning testified that after he ordered the driver back into his truck, the driver "turned to me and he waved his hands to me and he said, `F' you' and got back into his truck and slammed the door." Transcript at 8. After backup assistance arrived, Patrolman Herning approached the driver's side of the truck. As he made his first contact with appellant, who was the driver of the truck, the Patrolman noticed that appellant "was rolling his eyes in the back of his head, almost as though he was ready to pass out." Transcript at 8. According to the Patrolman, appellant was argumentative and told the Patrolman that, since he was not in his truck and was on private property, the Patrolman had no reason to stop him.
 {¶ 7} The Patrolman then ordered appellant to get out of his truck and administered field sobriety tests to appellant. When asked why he administered these tests to appellant, Patrolman Herning responded as follows: "[t]he actions leading up prior to that, the driving, the avoidance — sitting around, trying to avoid me, his eyes rolling back in his head. It appeared he was under the influence of either drugs or alcohol." Transcript at 10. The tests were administered in an uneven, grassy area. The first test administered was the horizontal gaze nystagmus (HGN) test. At the suppression hearing, the Patrolman testified that he observed four indicators of impairment when administering such test. During the next test performed, which was the walk-and-turn test, appellant was argumentative and fell off the line once during the instructions and then again during the test itself. Patrolman Herning testified that while he was giving instructions for the final test, the one-leg stand, appellant was "constantly fidgety, moving around, moving his fingers around, rubbing his hair, tugging on his clothes" and that appellant failed to hold up his leg for 30 seconds. Transcript at 18. The following testimony was adduced when the Patrolman was asked what kind of information appellant's performance on the one-leg stand gave him:
 {¶ 8} "A. Also that he was under the influence. The fidgetyness [sic], the moving his fingers, pulling on his clothes, rubbing his hair, all that indicates to me that he's under the influence of drugs.
 {¶ 9} "Q. Now, are those things that you just described a part of the one-leg stand, or were those other facts and circumstances that you took into consideration?
 {¶ 10} "A. Well, that part, actually, I was beginning the instruction stage of the one-leg stand, but there was indicators of using arms for balance, not watching the feet, messing the count up, that stuff, those were indicators." Transcript at 19.
 {¶ 11} Appellant was then arrested for operating a motor vehicle while intoxicated. During his search of appellant's person after the arrest, the Patrolman found a Nike purse attached to a keychain. When he opened the same, the Patrolman found "a piece of what they call choreboy. It's commonly used for a crack pipe as a filter." Transcript at 22. In addition, the Patrolman found white residue that was determined to be Oxycodone. A breathalyzer test yielded a result of .045.
 {¶ 12} As memorialized in an entry filed on December 16, 2002, the trial court denied appellant's Motion to Suppress. The trial court, in its entry, stated, in relevant part, as follows:
 {¶ 13} "A. The officer had reasonable suspicion and probable cause to make the initial stop based upon his observations of traffic violations.
 {¶ 14} "B. The defendant's conduct of accelerating away from the officer, pulling off River Street through a ditch and bringing the truck to a stop in a wooded area are indications of flight and would have provided the officer with probable cause to arrest the defendant for failure to comply with an order or signal from a police officer.
 {¶ 15} "C. The officer had probable cause to believe the defendant was operating a motor vehicle under the influence of drugs.
 {¶ 16} "D. The search of defendant's person was proper as being incident to a lawful arrest."
 {¶ 17} Following a jury trial, appellant was found guilty of the offense of aggravated possession of drugs. Pursuant to a Judgment Entry of Sentence filed on February 25, 2003, appellant was placed on five years of community control under specified terms and conditions. In addition, appellant's operator's license was suspended for a period of six months.
 {¶ 18} It is from his conviction and sentence that appellant now appeals, raising the following assignment of error:
 {¶ 19} "The trial court erred in not suppressing evidence seized as a result of a search incident to an arrest when there was no basis for the arrest."
 I {¶ 20} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. Appellant specifically contends that there was no basis for his arrest since the field sobriety tests were not administered in strict compliance with standardized testing procedures and that, therefore, the evidence seized as a result of the search of appellant's person following his arrest should have been suppressed. We disagree.
 {¶ 21} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v. Claytor
(1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690,699, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 22} "Probable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged." State v. Medcalf,
(1996), 111 Ohio App.3d 142, 147, 675 N.E.2d 1268 (citing Huber v.O'Neill (1981), 66 Ohio St.2d 28, 30, 419 N.E.2d 10). In determining whether probable cause exists to arrest a suspect for driving under the influence of alcohol, "the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence of alcohol." Id. (citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225). In determining whether probable cause exists, a court must look at the totality of the facts and circumstances. Medcalf, supra.
 {¶ 23} Probable cause to arrest a suspect for driving while under the influence of alcohol may exist without consideration of field sobriety tests. In State v. Homan, 89 Ohio St.3d 421, 427,2000-Ohio-212, 732 N.E.2d 952, the Ohio Supreme Court excluded the results of field sobriety tests administered to a suspect. The Homan
Court went on to find that, even without the results of the field sobriety tests, probable cause existed to support the arrest of the suspect when the totality of the facts and circumstances was considered.
 {¶ 24} Even without consideration of the field sobriety test results, we find that, based on the totality of circumstances, there was sufficient probable cause to arrest appellant for operating a motor vehicle while intoxicated. As is stated above, testimony was adduced at the suppression hearing that appellant made an illegal right turn and, when the Patrolman attempted to stop him, accelerated away from the officer and tried to avoid him. Appellant then drove through a ditch and parked in a wooded area. At the hearing, Patrolman Herning testified that, when he approached appellant, appellant "was rolling his eyes in the back of his head, almost as though he was ready to pass out" and that appellant was argumentative. Transcript at 8. In addition, the Patrolman testified that, during his encounter with appellant, appellant was fidgety and was tugging on his clothes, moving his fingers and rubbing his hair.
 {¶ 25} Since, based on the totality of circumstances, there was probable cause to arrest appellant for driving under the influence, appellant's sole assignment of error is overruled.
 {¶ 26} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Wise, J., concur.