The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant.

[Cite as *State v. Williams* (1993), 86 Ohio App.3d 37.]

Court of Appeals of Ohio,
Pickaway County.

No. 92–CA–08.

Decided Jan. 28, 1993.

*Gary Kenworthy,* Circleville Law Director, for appellee.

*Kingsley Law Offices* and *James R. Kingsley,* for appellant.

HARSHA, Judge.

Defendant, Lowell Williams, appeals from a judgment of conviction and sentence entered by the Circleville Municipal Court finding him guilty of operating a motor vehicle with a breath-alcohol concentration above the specified limit, in violation of R.C. 4511.19(A)(3).

Appellant raises the following assignments of error:

"I. The trial court erred to the prejudice of the defendant when it did not suppress the evidence obtained from the arrest because the initial stop of the defendant lacked a reasonable and articulable suspicion that a crime had been committed.

"II. The arresting officer lacked probable cause to believe the defendant was guilty of the offense of OMVI (A)(1) or (A)(3) and therefore he was not entitled to request field sobriety tests and based upon those test results a BAC Verifier test."

Having fully considered these assignments of error, we reverse the judgment of the trial court for the reasons which follow.

On December 30, 1991, appellant, travelling east on State Route 665, turned right onto southbound U.S. Route 23 in Pickaway County. Trooper Carson, who was travelling north on Rt. 23, turned around to follow appellant southbound on Rt. 23. Trooper Carson testified that he "turned on" appellant's vehicle because "it was at a time [11:16 p.m.] that we see a lot of DUI drivers" and because "it looked like a brand new pickup truck and they are quite frequently stolen. * * *" Trooper Carson followed appellant for approximately two miles during which time he observed the appellant's vehicle move about one tire width into the left lane when going around a curve and then move back into the right lane. The appellant again moved into the left lane about one tire width, then moved completely into the left lane and made a proper left turn onto Pickaway Road where Trooper Carson pulled him over.

When Trooper Carson approached the appellant's vehicle he noticed a strong odor of alcohol but did not notice anything unusual about appellant's speech or eyes. Trooper Carson asked appellant to get out of the vehicle and then to perform field coordination tests and the horizontal gaze nystagmus test, all of which appellant failed. Trooper Carson placed appellant under arrest and administered the BAC Verifier test. Appellant tested .237.

Appellant was charged with first offense OMVI in violation of R.C. 4511.-19(A)(1) and (A)(3) and with failure to drive within the marked lanes in violation

of R.C. 4511.33. Appellant pleaded not guilty and filed a motion to suppress the evidence gained by Trooper Carson because of a lack of reasonable suspicion for the initial stop and lack of probable cause for the arrest. A hearing on the motion was held on February 7, 1992 and the trial court denied the motion from the bench. Appellant then pleaded no contest to R.C. 4511.19(A)(3).[1] He was sentenced to ninety days in jail, a $450 fine and a two-year license suspension. Judgment was entered on February 7, 1992 and appellant timely filed his notice of appeal.

Thereafter, appellant filed a motion for a new trial. The trial court has not ruled on this motion.

 Before considering appellant's assignments of error, we must address a preliminary jurisdictional issue. We have a duty to *sua sponte* consider whether the entry from which this appeal is taken constitutes a final appealable order. *Wilson v. Patton* (1988), 49 Ohio App.3d 150, 152, 551 N.E.2d 625, 627. Because appellant filed a motion for a new trial after he filed this appeal, we must decide whether this appeal is premature. We hold that the judgment entry convicting and sentencing the appellant is a final appealable order and that the trial court has no jurisdiction to consider appellant's motion for a new trial.

The general rule is that when an appeal is taken, the trial court is divested of jurisdiction, except to take action in aid of the appeal. *State ex rel. Special Prosecutors v. Judges* (1978), 55 Ohio St.2d 94, 97, 9 O.O.3d 88, 89, 378 N.E.2d 162, 164. The trial court however does retain jurisdiction over issues not inconsistent with the power and jurisdiction of the appeal court to review, affirm, modify or reverse. *Id.; In re Kurtzhalz* (1943), 141 Ohio St. 432, 25 O.O. 574, 48 N.E.2d 657; Whiteside, Ohio Appellate Practice (1991) 19, T 1.09. Although in *Special Prosecutors* the appellate court had already entered judgment, the *Special Prosecutors* holding is not limited to that situation and has been followed when the appellate court has not yet rendered a decision. *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984; *State v. McGettrick* (1988), 40 Ohio App.3d 25, 531 N.E.2d 755; *Post v. Post* (1990), 66 Ohio App.3d 765, 586 N.E.2d 185 ("The Supreme Court could have limited its holding [in *Special Prosecutors*] to apply only to actions by a trial court that are inconsistent with a *judgment* by an appellate court, but it did not do so.").

In the case at bar, appellant entered a no contest plea and subsequently filed a motion for a new trial. The trial court's consideration of the motion for a new

---

1. The court's entry states that defendant is "guilty of the offense charged in the complaint." Appellant was charged with three separate violations in three separate complaints. We assume the other two were dismissed upon the no contest plea even though the record is unclear.

trial, the functional equivalent of a motion to vacate the no contest plea, would clearly interfere with the appellate court's jurisdiction and power because granting a motion for a new trial would obviate the appeal. *State v. McGettrick* (1988), 40 Ohio App.3d 25, 531 N.E.2d 755 (trial court has no jurisdiction to consider motion to vacate no contest plea after notice of appeal has been filed; judgment entry of conviction is a final appealable order).

App.R. 4(B) provides a thirty-day period following the date of the entry from which the defendant is appealing for the defendant to file a notice of appeal. The rule further provides:

"If a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction *may* be taken within thirty days after the entry of an order denying the motion." (Emphasis added.)

The use of the term "may" gives the defendant the option of appealing the conviction immediately or filing a motion for a new trial, thereby extending the time for appeal to thirty days following the entry denying the motion for a new trial. *State v. Schultz* (Sept. 30, 1988), Lake App. No. 12–206, unreported, 1988 WL 102637.

■ Having concluded that this appeal is not premature, we may now address the merits. In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, *e.g., State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584; see, also, *State v. Dreher* (July 28, 1992), Highland App. No. 786, unreported, at 5, 1992 WL 188501. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fausnaugh* (Apr. 30, 1992), Ross App. No. 1778, unreported, at 3, 1992 WL 91647. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *Dreher, supra; Fausnaugh, supra.*

In his first assignment of error, appellant asserts that the trial court erred in refusing to suppress the evidence obtained by Trooper Carson because the trooper lacked reasonable articulable suspicion to stop the appellant's vehicle.

■ The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts, that criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. To

justify an investigatory stop, a police officer must be able to articulate specific facts which would warrant a person "of reasonable caution" in the belief that the person stopped has committed or is committing a crime. *Terry* at 19–20, 88 S.Ct. at 1878–1879, 20 L.Ed.2d at 904–905.

The court below relied on the following factors to justify the initial stop of appellant: (1) that the appellant was driving a new pickup truck; (2) that it was 11:16 p.m.; and (3) that the appellant's vehicle moved out of its lane of travel by one tire width.

Our review of the totality of circumstances in the case at bar indicates that such factors do not constitute reasonable suspicion to justify the initial stop of the appellant. First, no evidence supports the conclusion that driving a new-looking pickup truck is a crime or evidence of criminal activity. Trooper Carson's articulation that pickup trucks are frequently stolen as a reason to follow appellant is suspect because Trooper Carson did not call in the plates to see if this was a stolen vehicle. While there would be no Fourth Amendment violation in merely following appellant based upon this hunch, it cannot be the basis for the stop here.

Second, reasonable suspicion to stop an individual cannot be based upon the time of day or night, absent other meaningful factors. In *State v. Sharp* (Oct. 2, 1986), Montgomery App. No. 9630, unreported, 1986 WL 11113, the Second Appellate District noted at 5–6:

"Percentagewise, stops or arrests at 4:30 a.m. in residential neighborhoods would probably ferret out many crimes, but in the absence of anything more specific, investigative stops based primarily upon the time of day or night would eventually do violence to the right of every individual to be free from unreasonable restraint or interference. And while it is always tempting to focus on end results when a mere hunch proves correct and guilt is established, the continuing vitality of the freedoms enjoyed by all citizens nonetheless depends upon reasonable adherence to basic procedural restrictions."

Finally, Trooper Carson stopped appellant because his vehicle crossed over the dividing line by one tire width on two occasions. Appellant's tire first crossed the line when going around a curve. The tire again crossed the line immediately before appellant made a proper lane change before a proper left turn. R.C. 4511.33(A), rules for driving in marked lanes, provides: "A vehicle or trackless trolley shall be driven, *as nearly as is practicable,* entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." (Emphasis

added.) It is uncontroverted that the appellant did not cause or threaten to cause harm to himself, the officer or others.

This court has noted that weaving, even within a single lane of traffic, can justify an investigatory stop. See *State v. Rhea* (Feb. 21, 1992), Ross County No. 1779, unreported, at 6, 1992 WL 37798, and cases cited therein. However, those cases are inapplicable here because they presented situations quite different than that in the case at bar. Each of those cases involved actual repeated weaving within a short distance or involved what was classified by the officer as "erratic driving." In the case at bar, appellant's activities before the stop were equally consistent with innocent behavior, see *State v. Bird* (1988), 49 Ohio App.3d 156, 551 N.E.2d 622, and, as the officer testified, were neither erratic nor a threat to safety. In sum, such minor weaving over a two-mile section of highway is not so unreasonable as to give a legitimate suspicion of criminal activity. If we were to hold otherwise, virtually every vehicle traveling our highways would be subject to being stopped. While the Fourth Amendment may provide less protection to persons in their vehicles than that afforded to citizens in their homes, its coverage is not so illusory as to justify this stop. Accordingly, the trial court erred in denying appellant's motion to suppress and appellant's first assignment of error is sustained.

Appellant argues in his second assignment of error that the trial court erred by denying appellant's motion to dismiss because of lack of probable cause to conduct field sobriety tests and then to arrest appellant. While we do not agree that probable cause is required to conduct field sobriety tests, we need not address this issue, since our disposition of the first assignment has rendered the question moot pursuant to App.R. 12(A)(1)(c).

*Judgment reversed.*

STEPHENSON, P.J., and GREY, J., concur.