DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant/Appellant Bret Gunther appeals from the judgment rendered by the Municipal Court of Circleville, Ohio, on his motion to suppress and his subsequent plea of no contest entered August 27, 2004. Appellant argues that the trial court erred in finding probable cause for his initial stop and subsequent arrest. He also argues that the trial court erred in admitting the portable breath test (PBT) results into evidence for the establishment of probable cause when the trooper misrepresented the admissibility of the results. We find that probable cause existed not only for Appellant's stop, but also for his subsequent arrest and therefore, affirm the trial court's denial of Appellant's motion to suppress. Additionally, because the trooper's arguable misstatement of the law regarding admissibility of PBT results did not amount to either a statutory or a constitutional violation requiring application of the exclusionary rule, we affirm the trial court's decision.
 {¶ 2} On April 10, 2004, around midnight, Appellant was stopped by an Ohio Highway Patrolman. Appellant was southbound on Ashville Pike in Pickaway County, along with two other vehicles. The trooper initially was northbound, but turned around to follow the three vehicles heading south. The trooper observed Appellant's vehicle cross the center line of the road at least one time, as verified by the cruiser video footage. The trooper pursued Appellant's vehicle, eventually signaling for him to pull over into a nearby business parking lot. Ultimately, Appellant was arrested and charged with violations of R.C. 4511.25 and 4511.19 (A) (1) and (A)(4), a marked lanes violation and driving under the influence of a drug or alcohol, respectively.
 {¶ 3} The trooper filed a statement of facts with the Circleville Municipal Court on April 12, 2004, which provided as follows:
 {¶ 4} "Your Honor, on April 10, 2004, at 0029 hours Bret Gunther was stopped for a lane violation. I observed the defendant to be traveling southbound on Ashville Pike Rd. He drove left of center two times before I activated my overhead lights. He pulled into the bank parking lot at Ashville Pike and SR 752.
 {¶ 5} Speaking to the defendant his eyes was (sic) bloodshot and glassy. An odor of an alcoholic beverage was omitting from his person. He advised that he had three drinks in commercial point and was heading to the trackside bar in Ashville. The defendant was given the field sobriety tests. (See the Impaired Drivers Report for the results to the field sobriety tests). He was given a PBT test and tested .121.
 {¶ 6} The defendant was subsequently arrested for OVI, read his rights, and secured in the patrol car. His vehicle was secured at the scene and he was transported to the OSP Circleville Post for a chemical test. Upon arrival the defendant was read his rights and the BMV 2255. He was offered a breath test and accepted. He tested a .121.
 {¶ 7} He was transported to the Circleville Police Department and slated. He was given a court date of April 14, 2004, at 0830 hours. He was cited for OVI and left of center."
 {¶ 8} On May 19, 2004, Appellant filed a motion to suppress the evidence against him, claiming that the event was a warrantless seizure. On August 3, 2004, a suppression hearing was held and the arresting trooper was present. The trooper testified that he observed Appellant's vehicle travel left of center two times and when asked if it would appear on the video tape, he responded "[Y]es, it should be. It should be on there." While viewing the video, in court, the following testimony occurred:
"PROSECUTOR: Officer you viewed the tape did we capture the left of center on this tape?
WITNESS 1: Yes you should have it was right . .
JUDGE: Right in the beginning.
WITNESS 1: Right after I passed that car."
 {¶ 9} The trooper further testified that once he stopped Appellant, he noticed "bloodshot and glassy eyes, [and] an odor of alcoholic beverage coming from the vehicle." The trooper also testified that Appellant told him he had three drinks. He then testified about performing field sobriety tests in which Appellant scored six clues on the horizontal gaze nystagmus test and three clues on the walk and turn test. During his testimony, the trooper noted that Appellant performed well on the one legged stand test. The trooper testified he then asked Appellant to submit to a PBT. Although not explored by either Appellant or Appellee during the hearing, it appears that upon inquiry by Appellant, the trooper advised that the results of the PBT could not be used against him. Appellant agreed to take the test, which indicated a reading of .120.[1]
 {¶ 10} After hearing arguments by counsel, the trial court overruled the motion to suppress in its entirety, making several findings regarding probable cause to stop and arrest Appellant and also the admissibility of the PBT results, including the following:
1) that the PBT is not an evidentiary device like the Datamaster, but is a fact to be weighed among all other things, but given no scientific credibility; 2) that the video tape showed a more than a foot left of center violation with a relatively jerky correction, which probably got the officer's attention; 3) that the officer noticed glassy, bloodshot eyes and a strong odor of alcohol upon approaching Appellant; 4) that the Appellant told the officer that he had consumed alcohol that evening; and 5) that he received a strong reading on the HGN test and failed the PBT, and that Appellant even indicated to the officer that he thought he would fail the PBT test. The trial court reasoned that based upon these facts and circumstances, a reasonable officer would have taken Appellant in for a Datamaster test and as such, there was probable cause for the arrest.
 {¶ 11} On August 27, 2004, Appellant entered pleas of no contest to both the OMVI and left of center charges, violations of R.C. 4511.19(A)(1) and (A)(4) and 4511.25 respectively. On September 15, 2004, he was sentenced to thirty days incarceration, with sentence suspended, mandatory three days in jail or three day driver intervention program, fines, costs, license suspension and probation. It is from this entry that Appellant now appeals, assigning the following errors:
 {¶ 12} "I. THE TRIAL COURT ERRED IN FINDING PROBABLE CAUSE FOR THE STOP OF THE DEFENDANT.
 {¶ 13} II. THE TRIAL COURT ERRED IN FINDING PROBABLE CAUSE FOR THE ARREST OF THE DEFENDANT.
 {¶ 14} III. THE COURT ERRED IN ADMITTING THE PORTABLE BREATH TESTING DEVICE INTO EVIDENCE FOR PURPOSE OF THE PROBABLE CAUSE HEARING BECAUSE THE OFFICER MISREPRESENTED THE PBT'S LEGAL STATUS TO THE DEFENDANT TO GET HIM TO TAKE THE TEST."
 {¶ 15} In his first assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress. Initially, we note that appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Featherstone,150 Ohio App.3d 24, 2002-Ohio-6028, 778 N.E.2d 1124 at paragraph 10, citing State v. Vest, Ross App. No. 00CA2576, 2001-Ohio-2394; State v.Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v. Mills (1992), 62 Ohio St.3d 357,366, 582 N.E.2d 972, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583; see, also, State v. Williams (1993), 86 Ohio App.3d 37,41, 619 N.E.2d 1141. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; Statev. Klein (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141; Williams,Guysinger, supra.
 {¶ 16} Appellant argues that the trooper's testimony only established one, not two, lane violations and that the testimony regarding the lane violation failed to include a description as to the size or general nature and character of the violation. Appellant challenges the trial court's reasoning that probable cause existed for the stop, based upon a lack of description of the event, a lack of articulation of the event by the trooper and no video back-up of the event. Appellant argues that the present case is similar to State v. Brite (1997), 120 Ohio App.3d 517,698 N.E.2d 478 and Williams, supra, apparently failing to recognize thatBrite and Williams have effectively been overruled and are no longer followed by this court.
 {¶ 17} Both Williams and Brite were part of a line of cases holding that de minimus traffic violations do not constitute reasonable suspicion to effect an investigatory traffic stop. However, this court has abandoned the precedent of Williams and Brite, and instead relies on the reasoning of Whren v. United States (1996), 517 U.S. 806, 116 S.Ct 1769,135 L.Ed.2d 89 and Dayton v. Erickson (1996), 76 Ohio St.3d 3,1996-Ohio-431, 665 N.E.2d 1091, where the Supreme Court of Ohio explicitly concluded "that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." In Dayton, the court reasoned that the officer "clearly had probable cause to stop appellee based on the traffic violation (failure to signal a turn) which occurred in the officer's presence. Thus the stop was constitutionally valid." Dayton at 5.
 {¶ 18} We adopted this reasoning in State v. Woodrum, Athens App. No. 00CA50, 2001-Ohio-2650, where an officer initiated a stop after observing an appellant driving outside of his lane. The reasoning in Woodrum drew a distinction between investigative stops and non-investigative stops, reasoning that an officer must have reasonable suspicion based upon specific and articulable facts in order to make an investigative stop, but must have probable cause in order to make a non-investigative traffic-offense stop. Id. We held that "[i]t is clearly the current status of the law that a de minimus violation of a traffic offense constitutes probable cause to stop a vehicle." (Citations omitted). We recently adhered to the reasoning of Woodrum in State v. Kellough,
Pickaway App. No. 02CA14, 2003-Ohio-4552, where we held that an officer who observed a left of center violation had probable cause to effect a stop of a vehicle.
 {¶ 19} Here, the trooper testified that he observed Appellant travel left of center two times. The video from the cruiser showed at least one left of center violation. The trial court, based upon the testimony and a review of the video found that there was a "substantial, like I would say more than a foot left of center and a relatively jerky correction which I'm sure is what got the officer's attention." Based upon these facts and findings we find that the trial court reasonably concluded that probable cause existed for Appellant's stop and, as a result, we find Appellant's first assignment of error to be without merit.
 {¶ 20} Appellant argues in his second assignment of error that the trial court erred in denying his motion to suppress and in finding probable cause for his arrest. Probable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the individual accused is guilty of the offense with which he or she is charged. Huber v. O'Neill (1981), 66 Ohio St.2d 28, 30, 419 N.E.2d 10;State v. Glasscock (Sept. 20, 1990), Highland App. No. 726, 1990 WL 138494. For purposes of an arrest for driving under the influence, probable cause exists if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19.Bucyrus v. Williams (1988), 46 Ohio App.3d 43, 45, 545 N.E.2d 1298;State v. McCaig (1988), 51 Ohio App.3d 94, 554 N.E.2d 925; State v.Shelpman (May 23, 1991), Ross App. No 1632, 1991 WL 87312.
 {¶ 21} The facts of Woodrum, supra, are nearly identical to the facts here. In Woodrum, the officer observed a lane violation, stopped appellant's vehicle, immediately noticed bloodshot eyes and the smell of alcohol, as well as appellant's general lack of coordination, administered field-sobriety tests and arrested appellant for OMVI. The trial court denied the appellant's motion to suppress and we affirmed, reasoning that based upon the totality of the circumstances, even without taking the field-sobriety tests into consideration, probable cause existed for the appellant's arrest. Woodrum, supra.
 {¶ 22} Here, the trooper observed a lane violation, observed bloodshot and glassy eyes, noticed a smell of alcohol and had a conversation with Appellant regarding his alcohol consumption that evening. Based upon these facts, as well as Appellant's performance on the field-sobriety tests and PBT, the trial court reasonably concluded that probable cause existed for Appellant's arrest. Accordingly, we find Appellant's second assignment of error to be without merit.
 {¶ 23} In his third assignment of error, Appellant contends the trial court erred in admitting the PBT results for purposes of establishing probable cause, claiming that the officer misrepresented the PBT's legal status to get Appellant to take the test (i.e. inferring police misconduct as a result of the misrepresentation). Appellant concedes that while other districts have refused to admit PBT results for purposes of establishing probable cause, this court has permitted their admission for probable cause purposes. See State v. Coates, Athens App. No. 01CA21, 2002-Ohio-2160, citing State v. Gibson (Mar. 17, 2000), Ross App. No. 99CA2516, 2000 WL 303134; State v. Ousley (Sept. 20, 1999), Ross App. No. 99CA2476, 1999 WL 769961; State v. Moore (June 29, 1999), Lawrence App. No. 98CA44, 1999 WL 440411. Appellant also concedes that officer misconduct has not traditionally been the basis for application of the exclusionary rule, but argues, presumably in the interests of fairness, that the trial court should not have considered the results when determining whether probable cause for arrest existed. We disagree.
 {¶ 24} In the present case, the patrolman arguably misstated the law. There is no indication from a review of the video that the patrolman intentionally misstated the law in order to get Appellant to submit to the test.
Upon administering the PBT, the video identifies the following exchange between Appellant and the trooper:
"TROOPER: What I'm offering here is a PBT test okay? You can take it or not. * * *.
APPELLANT: Well, I want to ask you just a question about that.
TROOPER: Okay.
APPELLANT: Now, I've have three beers and I know that's over the legal limit.
TROOPER: Okay.
APPELLANT: Well, according to my body weight and all that stuff.
TROOPER: Okay.
APPELLANT: So, what are my rights according to blowing in that and not blowing in that?
TROOPER: This here can't be used against you in court, okay?
APPELLANT: It can't?
TROOPER: This here just gives us another reason just to see where you're at * * * Alright. It just lets us know where you're at on this, okay?
APPELLANT: Alright.
TROOPER: Um, to be charged with DUI, charged wise, that's when we take you to the post.
APPELLANT: Alright.
TROOPER: And give you the BAC. That's what counts. Okay. This is just something that lets us know where you're at right now. So, are you willing to take that for me or not?
APPELLANT: What happens if I don't take it?
TROOPER: Well, we'll, you'll go through something here in a little bit, okay?
APPELLANT: Well, tell me what that is.
TROOPER: Well, I'll probably end up taking you in. Alright? probably will arrest you for DUI. This here is just to make sure, we'll see where you're at. So, you want to take it or not?
APPELLANT: Okay. So, what happens if I take it and my breath alcohol . . .
TROOPER: If you're way below then we'll kick you loose.
APPELLANT: Well, I know I'm not way below. I've had three beers in the last hour. I know I'm not below.
TROOPER: If you show up around 08 on this I'll be taking you in anyway.
APPELLANT: You'll probably be taking me in anyway then.
TROOPER: Well, you want to take it or not?
APPELLANT: Yeah. We can take it.
TROOPER: Okay."
 {¶ 25} The above exchange illuminates great effort by the trooper advising Appellant of his rights regarding submission to the PBT test. In fact, what the trooper told Appellant is not completely inaccurate. As Appellant points out in his brief, PBT results are not admissible in many districts in Ohio, unlike this district, where they are used solely as a factor to consider in the totality of the circumstances for establishing probable cause. Ideally, the trooper should not have attempted to give Appellant legal advice regarding the admissibility of the test results; however, we find that this error does not amount to police misconduct that would give rise to a constitutional violation in the form of a deprivation of due process. Nor did the trooper coerce Appellant into submitting to the test, but rather, he gave Appellant the option of taking or not taking the test four different times.
 {¶ 26} Ohio courts have held, in the context of confessions, that "deception on the part of the police in no way vitiates the voluntary nature of an otherwise valid statement." See State v. Loza,71 Ohio St.3d 61, 67-68, 1994-Ohio-409, 641 N.E.2d, (holding that defendant's confession was valid, despite the police falsely telling him that the victim was alive when all other circumstances surrounding the confession indicated it was made voluntarily); See, also, State v. Baker
(Nov. 4, 1995), Athens App. No. 94CA1644, 1995 WL 650154, (stating that "trickery and deception" such as a false statement regarding "the type and quantum of evidence" against a defendant is by itself insufficient to render a confession involuntary). These cases involve intentional misrepresentations in order to secure confessions, unlike the present scenario where the patrolman arguably misstated the law and told Appellant he could either take or not take the test. Appellant decided, of his own free will, to submit to the test, knowing and admitting to the patrolman that he knew he would test over the legal limit.
 {¶ 27} Further, as Appellant concedes, Ohio courts have held that evidence obtained through intentional misrepresentation by police is not excludable unless it amounts to a constitutional violation, even if the conduct constitutes a statutory violation. Appellant and Appellee both argue Fairborn v. Mattachione (1996), 72 Ohio St.3d 345, 1995-Ohio-207,650 N.E.2d 426 is applicable to the present facts. In Fairborn, the appellant was denied the statutory right to confer with counsel as a result of an officer's intentional misrepresentation. Based upon those facts, the Fairborn court held that even such a statutory violation would not result in the application of the exclusionary rule unless it also amounted to a constitutional violation. The Fairborn court excluded the evidence at issue because it was gained through police misconduct that amounted to a constitutional violation. Here, we know of no statutory violation, let alone a constitutional violation, that occurred because of the officer's arguable misstatement.
 {¶ 28} In light of the foregoing, we find that the trial court did not err in admitting and considering the PBT results in its determination of the existence of probable cause for Appellant's arrest. Further, the facts of this case, without taking the PBT results into consideration, provide probable cause for arrest (i.e. traffic violation, red and bloodshot eyes, odor of alcohol, admission to consumption of alcohol, performance on horizontal gaze nystagmus test and walk and turn test). Thus, we find Appellant's third assignment of error also to be without merit.
 {¶ 29} Based upon the foregoing, we affirm the decision of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion to Assignment of Error II and III and Concur in Judgment only to Assignment of Error I.
[1] Although the trooper's written statement indicated a PBT reading of .121, the Impaired Driver Report, as well as the testimony offered at the suppression hearing, indicated a reading of .120.