[Cite as *State v. Deemer*, 2015-Ohio-3199.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2015 AP 01 0006 |
| JESSICA DEEMER | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:  Appeal from the Tuscarawas County
Common Pleas Court, Case No.
2014CR090190


JUDGMENT:  Affirmed


DATE OF JUDGMENT ENTRY:  August 7, 2015


APPEARANCES:


For Plaintiff-Appellant    For Defendant-Appellee


MICHAEL J. ERNEST    MARK A. PERLAKY
Assistant Prosecuting Attorney  Tuscarawas County Public Defender
125 E. High Avenue    153 N. Broadway St.
New Philadelphia, Ohio 44663  New Philadelphia Ohio 44663

*Hoffman, P. J.*

{¶1} Plaintiff-appellant the state of Ohio appeals the January 21, 2015 Judgment Entry entered by the Tuscarawas County Court of Common Pleas granting Defendant-Appellee Jessica Deemer's motion to suppress evidence.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 8, 2014, Appellee was operating a motor vehicle in the City of New Philadelphia, Ohio. Officer James Miller of the New Philadelphia Police Department observed the vehicle travel across the double yellow lines of the roadway with all four tires, a traffic violation, and initiated a stop. Upon approaching the vehicle, Officer Miller noticed Appellee appeared nervous, had shaky hands and constricted pupils. He then requested Appellee's personal identification, and went back to his cruiser to issue a citation and check for outstanding warrants. Officer Miller knew the vehicle had come from a known heroin house, and believed from his training and experience Appellee had indicators she was under the influence of narcotics.

{¶3} Sergeant Eddie Jones of the Tuscarawas County Sheriff's Office and Officer Mitch Gobely of the New Philadelphia Police Department then arrived at the scene as backup.

{¶4} Officer Gobely approached the driver's side window of the vehicle as Officer Miller prepared the traffic citation. His purpose in approaching Appellee was to obtain consent to search the vehicle for narcotics. He asked Appellee for consent to search the vehicle. Appellee responded it was not her vehicle, and looked to her passenger for guidance. She stated, "It's not my vehicle. I'm not sure I can do that." The passenger, Jason Carothers, responded, "There is nothing in here. You can go

ahead and search it."  Appellee stated, "Yeah, that's fine. Go ahead and search the vehicle."

{¶5}  Officer Gobely testified Appellee appeared nervous, and was apparently "more nervous than a driver in a normal traffic stop."  He testified he believed she was not nervous about giving consent to search; rather, only hesitated because it was not her vehicle, at which point he explained to her she had the authority to make the decision as to whether to grant consent to search.  Upon obtaining her consent to search, Officer Gobely asked Appellee and Carothers to exit the vehicle.

{¶6}  Appellee was asked if she had anything in her pockets, and then asked to step to the rear of the vehicle.  Officer Gobely testified Officer Miller and Sheriff Deputy Eddy Jones were on the scene.  Captain Stewart of the New Philadelphia Police Department also arrived at the scene shortly after Gobely and Jones arrived.  At the time of Appellee's initial "consent" given in the vehicle, there were four police cruisers on the scene with flashing lights.

{¶7}  Officer Miller stepped out of his cruiser and engaged Appellee in a conversation near the rear of the vehicle. DVD video of the stop obtained from Officer Miller's police cruiser provides audio testimony of Officer Miller engaging Appellee and Carothers at the driver's side door, but goes silent when Officer Miller returns to his cruiser approximately at 4:20 (four minutes and twenty seconds) into the video.  DVD Audio testimony of Appellee consenting to the search is unavailable.

{¶8}  At 8:35 (eight minutes and thirty-five seconds) into the video, the audio returns and Officer Miller is heard engaging Appellee in a conversation and making statements to the effect, "if you happened to go to jail tonight, if you had anything on

your person, it would be a felony…" Officer Miller testified to making statements to this effect. Appellee then consented to the search. On the video, four officers are seen surrounding Appellee at the time Officer Miller is talking to her with shining flashlights.

{¶9} After Appellee's consent given to Officer Miller, Officer Miller walked up to the driver's side of the vehicle and observed a purse on the driver's seat. Inside the purse, the officer found a syringe. The entire encounter lasted approximately 13 minutes prior to Appellee's arrest.

{¶10} On November 19, 2014, the Tuscarawas County Grand Jury indicted Appellee on one count of possessing drug abuse instruments, in violation of R.C. 2925.12(A), a misdemeanor of the second degree.

{¶11} Appellee filed a motion to suppress asserting the officer did not have reasonable suspicion to search her vehicle and she did not voluntarily consent to the search. The trial court conducted a hearing on the motion on December 12, 2014, and December 22, 2014. Via Judgment Entry entered January 21, 2015, the trial court granted Appellee's motion to suppress.

{¶12} The State now appeals, assigning as error:

{¶13} "I. THE TRIAL COURT ERRED IN CONCLUDING THAT THE APPELLANT FAILED TO PROVE THAT THE APPELLEE GAVE A VALID CONSENT TO SEARCH."

I.

{¶14} In *State v. Goffee,* 161 Ohio App.3d 199, 2005-Ohio-2596, this Court held there are three ways to challenge a trial court's ruling on a motion to suppress,

There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the judgment of the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and that it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger.* As the United States Supreme Court held in *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, "as a general matter

determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶15}** Consent to search is well-established exception to the warrant requirement. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105. The proper test is whether the totality of the circumstances demonstrates the consent was voluntary. *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343.

**{¶16}** In *Robinette,* the Ohio Supreme Court held,

We find Bustamonte instructive in defining when permission to search is truly consensual under the totality of the circumstances:

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id., 412 U.S. at 248–249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.

*State v. Robinette,* 1997-Ohio-343, 80 Ohio St. 3d 234, 242-43, 685 N.E.2d 762, 769

**{¶17}** In *State v. Camp*, Richland App. No. 14 CA 42, 2014-Ohio-329, this Court held,

One well-established exception to the warrant requirement is the consent search. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton,* 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen,* 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). In *Schneckloth,* the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. *Id.* at 227–228, 93 S.Ct. 2041. *See, also, State v. Fry,* 4th Dist. No. 03CA26, 2004-Ohio-5747, 2004 WL 2428439, ¶ 18.

The United States Supreme Court further noted, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Drayton, supra,* 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973),

(*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *State v. Barnes,* 25 Ohio St.3d 203, 495 N.E.2d 922 (1986); *State v. McConnell,* 5th Dist.Stark No. 2002CA00048, 2002-Ohio-5300, 2002 WL 31270071, ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *Id.* Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette,* 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997), *citing Davis v. United States,* 328 U.S. 582, 593–594, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946). *The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. State v. Clelland,* 83 Ohio App.3d 474, 615 N.E.2d 276 (4th Dist.1992). (Emphasis not in original opinion but added for purpose of emphasis in this opinion).

**{¶18}** As set forth in the Statement of the Facts and the Case, supra, Officer Gobely asked Appellee for consent to search the vehicle while Appellee remained in the vehicle with Carothers.  Appellee was hesitant and looked to Carothers.  Officer Gobely testified Appellee appeared nervous, and was more nervous than an average traffic stop.

**{¶19}** Appellee then exited the vehicle, and stepped to the rear of the vehicle.  Officer Miller then engaged Appellee in a conversation.  Officer Miller told Appellee, while she was surrounded by three officers, with a total of four officers present and the scene illuminated by the headlights and stop lights of four police cruisers, "if she happened to go to jail tonight, and anything was found on her person, it would be a

felony."  Thus, Officer Miller implied Appellee might be taken to jail that night.  Appellee then consented to the search, and Officer Miller began the search at that point.

**{¶20}**  At the suppression hearing, Officer Miller testified:

THE WITNESS: When I began talking with her there I went up and I asked him [sic] again if there was anything illegal in her purse and in her vehicle or anything we needed to know about and then I also advised her that if she did have anything on her person and for some reason she would go back to jail tonight she could end up getting a higher charge, so if she has anything on her person it's better to give it up before going back to jail if for some reason she would go back to jail.  And then I asked her if she'd mind if we looked in the vehicle or looked in her stuff and she said no.

THE COURT: Okay.  That's what I did not hear you say.  But you're telling me that that's what you said immediately before you went up to the driver's side.

THE WITNESS: That's what I said to her, yeah.

THE COURT: Okay.

**{¶21}**  Tr. at 39-40.

**{¶22}**  On cross-examination, Miller testified:

Q. Okay. So I guess my next question is when you're asking for her consent why was it necessary to advise her of the possibility of felony 3 illegal conveyance charge?

A. I like to tell them that because if we find something and they end up going back to the jail and they have it tucked on them which normally they do tuck stuff on them in their person, especially females because we're not going to intrude upon a female's pockets or inside of her, you know, bra area or anything like that. So, I like to advise them beforehand if something does happen that, you know what I mean, it's best to give it up now because she's going to get lesser charges than she would if she were to go back to jail if she got something.

Q. Officer Miller, couldn't that wait until you find something though?

A. It could.

**{¶23}** Tr. at 59.

**{¶24}** Based upon the totality of the circumstances, we do not find the trial court's determination Appellee's consent was not freely [voluntarily] given was clearly erroneous.

{¶25} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Wise, J. concur