[Cite as *State v. Flink*, 2021-Ohio-3833.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2021 CA 00013 |
| STEPHANIE L. FLINK | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:         Criminal Appeal from the Court of Common
                                 Pleas, Case No.  2020 CR 608


JUDGMENT:                        Affirmed


DATE OF JUDGMENT ENTRY:          October 28, 2021


APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

R. KYLE WITT                         AARON R. CONRAD
PROSECUTING ATTORNEY                 CONRAD/WOOD
CHRISTOPHER A. REAMDER               120 East Main Street
ASSISTANT PROSECUTOR                 Suite 200
239 West Main Street, Suite 101      Lancaster, Ohio  43130
Lancaster, Ohio  43130

*Wise, John, J.*

**{¶1}** Appellant State of Ohio appeals the Fairfield County Common Pleas Court's granting of Appellee's Motion to Suppress. Appellee is Stephanie L. Flink. The relevant facts leading to this appeal are as follows.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** On December 10, 2020, Appellee was indicted by the Fairfield County Grand Jury for one count of Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and (C)(1)(a), a fifth-degree felony, stemming from an incident which occurred on November 9, 2020.

**{¶3}** On February 4, 2021, Appellee filed a Motion to Suppress.

**{¶4}** On March 9, 2021, the trial court held a hearing on Appellee's Motion to Suppress.

**{¶5}** At the hearing, Officer Christopher Cook testified that on November 9, 2020, he initiated a traffic stop when Appellee failed to use a turn signal.

**{¶6}** Appellee's license was not valid through the State of Ohio, but it was valid through the State of Kentucky. It took nearly five minutes to receive the confirmation.

**{¶7}** After Officer Cook checked Appellee's license but before he issued a citation, he asked Appellee to exit the vehicle. He saw Appellee reach into the back seat, and noticed the man in the passenger seat of the vehicle was acting nervous. Officer Cook then said he had a "gut feeling" something was going on in the vehicle.

**{¶8}** Appellee denied anything illegal in the vehicle, and Officer Cook asked for consent to search the vehicle. Officer Cook said he mentioned the possibility of a canine sniffing around the vehicle and received general consent from Appellee to search the

vehicle. No canine was called, no canine was available, and Officer Cook had no intention of calling a canine unit. At this point six to seven minutes had elapsed since the stop occurred.

**{¶9}** Officer Cook initiated a traffic stop, asked Appellee out of the vehicle, and began questioning her about contraband in her vehicle. He said he believed he did not restrict her movement. He testified that Appellee was calm and collected, very polite.

**{¶10}** Officer Cook continued testifying that normally at a traffic stop he would run a check on the vehicle and license, then issue a citation or warning. He said he deviated from issuing the citation or warning because he had "several of those funny feelings."

**{¶11}** Officer Cook observed Mr. Rider in the passenger seat slouching, and Rider would not look the officer in the eye. He said this made him feel like this was more than just a traffic infraction.

**{¶12}** While searching the vehicle, Officer Cook asked Appellee for permission to search her purse. Officer Cook said he received permission, and inside Appellee's purse, Officer Cook found a tin can. Officer Cook then opened the tin can finding a butterfly knife. Under the knife was methamphetamine.

**{¶13}** Officer Cook indicated the entire search was consensual, and that Appellee never withdrew her consent.

**{¶14}** On April 6, 2021, the trial court granted Appellee's Motion to Suppress.

### ASSIGNMENTS OF ERROR

**{¶15}** Appellant timely filed a notice of appeal and herein raises the following Assignment of Error.

**{¶16}** "I. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT FOUND THAT APPELLEE [sic], STEPHANIE FLINK'S CONSENT TO SEARCH HER VEHICLE WAS INVOLUNTARY."

**I.**

**{¶17}** In Appellant's sole assignment of error, Appellant presents two issues for consideration. First, the trial court did not apply a totality of the circumstances instead focusing on a singular factor to determine if Appellee's consent to search was given voluntarily. Second, under a totality of the circumstances test, does an officer informing the motorist their car may be subject to a canine search amount to coercive conduct rendering Appellee's consent involuntary.

**a. Standard of Review**

**{¶18}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), *overruled on other grounds*, *State v. Gunther*, 4th Dist. Pickaway No. 04CA25, 2005-Ohio-3492, ¶16.

**{¶19}** Three methods exist to challenge a trial court's ruling on a motion to suppress. First, appellant may challenge the trial court's findings of facts. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Second, appellant may argue the trial court failed to apply the appropriate test or correct law of the findings of fact. In that case, the appellate court can reverse the trial court for committing an error of law. *Williams* at 41. Third, appellant may argue the trial court incorrectly decided the ultimate issue raised in the motion to suppress. When addressing the third type of challenge, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case (Citation omitted). *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

**{¶20}** "The voluntariness of a consent search is a question of fact and will not be reversed on appeal unless clearly erroneous." *State v. Bickel*, 5th Dist. Ashland No. 2006-COA-034, 2007-Ohio-3517, ¶24.

**b. Did the trial court apply a totality of the circumstances test?**

**{¶21}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

**{¶22}** Consent to search is a well-established exception to the warrant requirement; no Fourth Amendment violation occurs when an individual voluntarily consents to search. *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242. The United States Supreme Court acknowledged the importance of consent

searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. *Schneckloth v. Bustamonte* (1983), 412 U.S. 218, 227-228, 93 S.Ct. 2041, *see, State v. Fry,* 4th Dist. No. 03CA26, 2004-Ohio-5747 at ¶ 18. The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado* (1984), 466 U.S. 210, 216, 104 S.Ct. 1758; *Drayton, supra,* 536 U.S. at 205, 122 S.Ct. at 2113. A voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte* (1983), 412 U.S. 218, 235, 93 S.Ct. 2041, 2052 (*quoting Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023); *State v. Barnes* (1986), 25 Ohio St.3d 203, 495 N.E.2d 922; *State v. McConnell*, 5th Dist. No. 2002CA00048, 2002-Ohio-5300 at ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *Id.* Whether or not such consent was voluntarily given depends on the totality of the circumstances. *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762, 1997-Ohio-343.

{¶23} In *Robinette*, the Ohio Supreme Court held:

We find Bustamonte instructive in defining when permission to search is truly consensual under the totality of the circumstances:

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was

in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.* 412 U.S. at 248-249, 93 S.Ct. at 2059, 36 L.E.2d at 875. *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762, 1997-Ohio-343.

**{¶24}** In *State v. Wiegand*, 5th Dist. Licking No. 17-CA-24, 2017-Ohio-9143, ¶28, this Court listed six important factors when determining the voluntariness of consent:

(1) [T]he voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

**{¶25}** Appellant contends the trial court did not apply a totality of the circumstances test, but instead focused on only one factor. We disagree as a complete review of the record shows Appellant's argument is factually inaccurate.

**{¶26}** While the trial court extensively discussed the police's coercive procedures during this search, the trial court also found that Appellee's custodial status was not voluntary, and that Appellee was not aware she had a right to refuse consent.

**{¶27}** In its journal entry dated April 6, 2021, the trial court noted that Appellee, while under the impression the stop was for a traffic violation and check on validity of her

license, was asked for consent to search her vehicle without indication if the issue was fully resolved. The officer never returned to his cruiser to issue a citation or indicated Appellee was free to go. On the contrary, Officer Cook led Appellee to believe, falsely, that a canine unit was on the way, Appellee may go to prison, and to relinquish any contraband in the vehicle.

**{¶28}** The trial court concluded by finding, under a totality of the circumstances of the stop, Appellee's consent was not voluntary.

**{¶29}** Upon review of the trial court's journal entry, we find the trial court applied a totality of the circumstances test.

### c. Did Officer Cook engage in coercive behavior?

**{¶30}** Again, consent to search is a well-established exception to the warrant requirement; no Fourth Amendment violation occurs when an individual voluntarily consents to search. *Drayton* at 207, 122 S.Ct. 2105, 153 L.Ed.2d 242. The United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. *Schneckloth* at 227-228. *See, State v. Fry,* 4th Dist. No. 03CA26, 2004-Ohio-5747 at ¶ 18. The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado* (1984), 466 U.S. 210, 216, 104 S.Ct. 1758; *Drayton, supra*, 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v.*

*Bustamonte* (1983), 412 U.S. 218, 235, 93 S.Ct. 2041, 2052 (*quoting Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023); *State v. Barnes* (1986), 25 Ohio St.3d 203, 495 N.E.2d 922; *State v. McConnell,* 5th Dist. No. 2002CA00048, 2002-Ohio-5300 at ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *Id.* Whether or not such consent was voluntarily given depends on the totality of the circumstances. *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762, 1997-Ohio-343. "The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous." *State v. Deemer*, 5th Dist. Tuscarawas No. 2015 AP 01 0006, 2015-Ohio-3199, ¶17, *quoting State v. Camp*, 5th Dist. Richland No.14CA42, 2014-Ohio-329, 24 N.E.3d 601, ¶23.

**{¶31}** In *State v. Wiegand*, 5th Dist. Licking No. 17-CA-24, 2017-Ohio-9143, ¶28, this Court listed six important factors when determining the voluntariness of consent:

> (1) [T]he voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

**{¶32}** In *Bickel*, this Court in *dicta* noted that a "reasonable person" would not feel free to leave until the officer actually completed the issuance of the traffic citation or warning. *Bickel* at ¶26. "The potential coercive effect of the roadside detention is far more compelling when the officer requests permission to search before completing the citation." *Id*. When the officer makes a request to search when the driver is detained while awaiting the issuance of a citation, the reasonable person understands he is not free to leave.

**{¶33}** In *Deemer*, the Officer asked the defendant for consent to search his vehicle at a traffic stop because the defendant appeared more nervous than most traffic stops. *Deemer* at ¶18. The defendant exited the vehicle and spoke with officers at the rear of the vehicle. *Id.* at ¶19. While surrounded by officers the defendant was told that if she went to jail that night and anything was found on her, it would be a felony. *Id.* After the implication that she might be taken to jail, the defendant consented to a search. *Id.* This Court held based on the totality of the circumstances the trial court's determination that the defendant's consent was not voluntary was not clearly erroneous.

**{¶34}** Similar to *Deemer*, in the case *sub judice*, the trial court focused primarily on coercive police procedures and the voluntariness of Appellee's custody. Officer Cook, after ascertaining that Appellee had a valid license, did not issue a citation, deliver a warning, or instruct Appellee that she was free to leave. Instead, Officer Cook asked Appellee to exit the vehicle. He threatened a canine sniff of the vehicle. He told Appellee he did not want to take anyone to jail tonight, implying that Appellee may go to jail. Even though the communication between Appellee and the officer was friendly, Appellee was not free to leave, multiple police officers were on the scene as she was asked for consent, and she was visibly confused why Officer Cook threatened a canine search and implied she may go to jail.

**{¶35}** Based on a totality of the circumstance, we do not find the trial court's determination Appellee's consent was not voluntarily given was clearly erroneous.

{¶36} Appellant's sole Assignment of Error is overruled.

{¶37} For the foregoing reasons, the judgment of the Common Pleas Court of Fairfield County, Ohio, is hereby affirmed.

By: Wise, John, J.

Gwin, J., and

Wise, Earle, J., concur.

JWW/br 1012