OPINION
{¶ 1} Defendant-appellant Luis Llorens appeals his conviction and sentence from the Delaware Municipal Court on one count of driving under the influence of alcohol. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 2, 2005, appellant was arrested and charged with driving under the influence of alcohol/drug in violation of R.C. 4511.19(A)(1)(A), a marked lanes violation in violation of R.C. 4511.33, and failure to wear a safety belt in violation of R.C. 4513.263. On February 7, 2005, a written plea of not guilty was filed.
 {¶ 3} Thereafter, on February 11, 2005, appellant filed a Motion to Suppress alleging, in part, that there was no probable cause for his arrest.[1] A hearing on appellant's motion was held on April 8, 2005. The following evidence was adduced at the hearing.
 {¶ 4} Trooper James Tracy of the Ohio State Highway Patrol testified that he was in uniform on duty in a marked cruiser on February 2, 2005. At approximately 12:54 a.m., the trooper observed appellant driving southbound on Sawmill Parkway in Delaware County, which has two southbound lanes and two northbound lanes. While the posted speed limit is 45 mph, appellant was traveling 35 mph. Because appellant was driving 10 miles an hour below the speed limit, Trooper Tracy followed appellant's car for a little while. According to the trooper, appellant was alone in the vehicle.
 {¶ 5} According to Trooper Tracy, appellant "wasn't doing so hot staying in his lane." Transcript of February 11, 2005, hearing at 6. Trooper Tracy further testified as follows:
 {¶ 6} "A. . . . The one particular time he was traveling in the left lane, I was directly behind him, he just drifted slowly over to the — to the right lane until his right tires had crossed over the broken lane line completely into the right lane.
 {¶ 7} "Q. The dotted line —
 {¶ 8} "A. Yes sir.
 {¶ 9} "Q. — between left and right?
 {¶ 10} "A. Yes sir. Didn't — didn't stay that way for a very long time, but drifted — drifted back into the left lane." Transcript of February 11, 2005, hearing at 6. The trooper then activated his cruiser lights, but appellant did not stop immediately. When asked whether he observed any other traffic violations while appellant was continuing to drive after the cruiser's lights were activated, the trooper testified that appellant "either once or twice while he was traveling in the right lane after he'd made a proper lane change, as we continued southbound, he drifted back over until his left tires either touched or crossed completely over the — the dotted line." Transcript of February 11, 2005, hearing at 7-8.
 {¶ 11} Appellant eventually stopped. During his initial contact with appellant, the trooper "could smell a very strong odor of an alcoholic beverage in the vehicle." Transcript of February 11, 2005, hearing at 10. While appellant's speech was not slurred, his eyes were "very glassy" and appellant, when asked if he had consumed any alcohol, told the trooper that he had imbibed three beers earlier that evening.
 {¶ 12} Trooper Tracy then conducted field sobriety tests. The trooper testified that he observed three clues in each eye during the horizontal gaze nystagmus test, for a total of six clues and that appellant performed poorly on the walk-and-turn test. Trooper Tracy further testified that he had to stop appellant during the one-leg stand test since appellant was "in danger of losing his balance and falling down onto Sawmill." Transcript of February 11, 2005, hearing at 14. Trooper Tracy then arrested appellant for driving under the influence.
 {¶ 13} On cross-examination, Trooper Tracy testified that he observed appellant driving for approximately a mile or two before stopping him. The trooper testified that he did not ask appellant if he had any physical impairments that would affect his ability to perform the walk-and-turn and one-leg stand tests, although he believed that it was part of his instruction to do so. Trooper Tracy further testified that appellant crossed the broken line between the two southbound lanes and that he observed no other traffic violations. He further testified that he was unsure whether he asked appellant if appellant had contacts in his eyes at the time.
 {¶ 14} A videotape of the traffic stop was admitted into evidence at the suppression hearing and was reviewed by this court.
 {¶ 15} As memorialized in a Judgment Entry filed on April 14, 2005, the trial court overruled appellant's Motion to Suppress, finding that Trooper Tracy had probable cause to arrest appellant for driving under the influence of alcohol. The trial court, in its entry, stated, in relevant part, as follows
 {¶ 16} "Trooper Tracy observed the defendant's vehicle drift out of its lane of travel and over into the right lane and then drift back into the left lane. The video tape also demonstrated that the defendant's vehicle drifted slightly left of center just prior to coming to a stop. In addition to the driving, Trooper Tracy smelled an odor of alcohol about the defendant's person. He observed glassy eyes and the defendant acknowledged drinking about three beers earlier that evening. This evidence alone would warrant a finding of probable cause. In addition to these facts Trooper Tracy observed six of six clues on the horizontal-gaze nystagmus test. The defendant performed very poorly on the walk and turn and the one-leg stand tests. His poor performance was corroborated by viewing the video. Even if the one-leg stand and the walk and turn test had not been administered according to NHTSA standards the observation of poor coordination and lack of balance would have been probative evidence of the defendant's possible impairment. The court finds that there was probable cause to arrest the defendant for operating a vehicle while under the influence of alcohol."
 {¶ 17} Thereafter, on May 12, 2005, appellant entered a plea of no contest to the charge of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). The remaining charges were dismissed. Appellant was ordered to pay a fine in the amount of $250.00 and court costs. In addition, appellant's driver's license was suspended for a period of six months and appellant was ordered to complete a driver's intervention program.
 {¶ 18} Appellant now raises the following assignments of error on appeal:
 {¶ 19} "I. THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT BY OVERRULING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 {¶ 20} "II. THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT BY FAILING TO FIND THAT THE FIELD SOBRIETY TESTS ADMINISTERED BY THE OFFICER WERE INADEQUATE AND INEFFECTIVE WITH RESPECT TO REVEALING WHETHER OR NOT PROBABLE CAUSE EXISTED TO ARREST THE APPELLANT FOR DUI."
 I, II {¶ 21} Appellant, in his two assignments of error, argues that the trial court erred in overruling appellant's Motion to Suppress. We disagree.
 {¶ 22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v. Claytor
(1993), 85 Ohio App.3d 623, 620 N.E.2d 906; and Guysinger,
supra.
 {¶ 23} At issue in this case is whether Trooper Tracy had probable cause to arrest appellant for driving under the influence of alcohol. "Probable cause exists where there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that an individual is guilty of the offense with which he or she is charged." State v. Medcalf (1996),111 Ohio App.3d 142, 147, 675 N.E.2d 1268, citing Huber v. O'Neill (1981),66 Ohio St.2d 28, 30, 419 N.E.2d 10. In determining whether probable cause exists to arrest a suspect for driving under the influence of alcohol, "the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence of alcohol." Id., citing Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142. In determining whether probable cause exists, a court must look at the totality of the facts and circumstances. Medcalf, supra.
 {¶ 24} Probable cause to arrest a suspect for driving while under the influence of alcohol may exist without consideration of field sobriety tests. In State v. Homan, 89 Ohio St.3d 421,427, 2000-Ohio-212, 732 N.E.2d 952, the Ohio Supreme Court excluded the results of field sobriety tests administered to a suspect. The Homan Court went on to find that, even without the results of the field sobriety tests, probable cause existed to support the arrest of the suspect when the totality of the circumstances was considered. In Homan, the facts which supported a finding of probable cause were: red and glassy eyes, breath which smelled of alcohol, erratic driving and an admission that the suspect had consumed alcohol.
 {¶ 25} In State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, 801 N.E.2d 446, the Ohio Supreme Court held that, even though the standardized procedures were not strictly followed, "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." Id., at syllabus.
 {¶ 26} In the case sub judice, we find, based on the totality of circumstances, that Trooper Tracy had probable cause to arrest appellant for driving under the influence. The trooper observed appellant, at approximately 1:00 a.m., weaving within the two southbound lanes[2] and traveling 10 miles below the speed limit. Appellant did not stop immediately when signaled to do so. During his initial contact with appellant after the stop, the trooper smelled a very strong odor of alcohol in appellant's car and noticed that appellant's eyes were glassy. In addition, appellant admitted to consuming three beers earlier that evening.
 {¶ 27} Appellant, in his brief, contends that the field sobriety tests were not administered in compliance with NHTSA standards. Assuming, arguendo, that appellant is correct, as is stated above, an officer may testify regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests. In the case sub judice, Trooper Tracy testified as to appellant's lack of balance during the one-leg stand test and his need to stop the test due to his concern that appellant might fall into the street and appellant's overall lack of coordination during the walk-and-turn and one-leg stand tests. This court's review of the videotape of the stop confirms the troopers observation.
 {¶ 28} Based on the foregoing, and after reviewing the videotape in this matter, we find that the trial court did not err in overruling appellant's Motion to Suppress. We find that, based on the totality of circumstances, Trooper Tracy had probable cause to arrest appellant for driving under the influence alcohol.
 {¶ 29} Appellant's two assignments of error are, therefore, overruled.
 {¶ 30} Accordingly, the judgment of the Delaware Municipal Court is affirmed.
Edwards, J. Gwin, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware Municipal Court is affirmed. Costs assessed to appellant.
[1] While appellant raised other issues in his Motion to Suppress, the parties agreed that the only issue before the trial court at the suppression hearing was probable cause.
[2] In State v. Morrow, Delaware App. No. 02 CA 22, 2002-Ohio-5287, this court held that a police officer had probable cause to arrest the defendant for DUI where the officer observed the defendant, who smelled moderately of alcohol and had bloodshot eyes, weaving within his lane, and driving off the right side of the highway and touching the center line twice.