OPINION *Page 2 
{¶ 1} On November 9, 2007, the Stark County Grand Jury indicted appellant, Della Smith, on one count of possession of cocaine in violation of R.C. 2925.11. Said charge arose from an investigation after appellant was observed in a high crime area sitting in her vehicle talking to two individuals standing outside the vehicle. Upon seeing the police approach, one of the individuals standing outside the vehicle fled.
 {¶ 2} On December 24, 2007, appellant filed a motion to suppress, claiming an illegal stop. A hearing was held on January 2, 2008. By hearing disposition sheet filed January 3, 2008, the trial court denied the motion.
 {¶ 3} A jury trial commenced on January 23, 2008. The jury found appellant guilty as charged. By judgment entry filed February 27, 2008, the trial court sentenced appellant to three years of community control.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS."
 II {¶ 6} "THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL." *Page 3 
 III {¶ 7} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I {¶ 8} Appellant claims the trial court erred in denying her motion to suppress. We agree.
 {¶ 9} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 *Page 4 
S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 10} Appellant argues the officer lacked reasonable articulable suspicion to justify the traffic stop. At the conclusion of the suppression hearing, the trial court concluded the stop was based upon a reasonable suspicion of criminal activity:
 {¶ 11} "THE COURT: * * *The vehicle is observed first stationary with two individuals. One of those individuals runs, the other walks away from it. As the car continues to come in, the cruiser comes into the lot, the vehicle moves forward into the parking spot. As the officer is closer to the vehicle and out of his own cruiser, the vehicle starts to move backwards. He taps on the back of it to get it to stop. So there is a stop. Whether or not this stop is significant from the stationary vehicle, clearly he had a reasonable basis to be investigating when he observes someone running from the area of this car.
 {¶ 12} "The officer's testimony was changed somewhat. Clearly I'm not impressed with just a mass stopping of any vehicle or any person under the authority of police. That's why I asked whether he was being paid, whether he's an agent of the apartment, or whether he's working — regardless, he's a police officer. And using the authority of the police department to stop anybody and everybody, without any articulation of reasonable suspicion, I have a problem with.
 {¶ 13} "In this case, this individual observed a vehicle observed in an area, without question, of high crime activity, the very reason the task force was formulated in the first place. Whether or not he's checking everybody, but in this particular case it's coupled with, one, the area in which this took place, it took place at 9:30 at night. Two *Page 5 
individuals beside a vehicle. Officer said he's giving the benefit of the doubt. 99 out of a hundred times when that officer comes in, he would say that was consistent with a drug transaction taking place and that was his articulable suspicion. To his credit, he didn't say this.
 {¶ 14} "But the fact that an individual runs from that vehicle gave him the suspicious — coupled with the time of the evening, the area where it happened to further investigate and ask the additional information. The stop in this case, where the vehicle was rolling backwards having gone forward, is not that significant of an intrusion into the individual's right to override his ability to investigate further based on what he's observed." T. at 42-44.
 {¶ 15} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 16} Our first inquiry is whether or not the stop was a "consensual encounter" or a stop: *Page 6 
 {¶ 17} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * *The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings. * * * The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. * * * Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories.
 {¶ 18} "* * *
 {¶ 19} "The second type of encounter is a `Terry stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. Terry, supra. A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions.* * *" (Citations omitted.) State v. Taylor
(1995), 106 Ohio App.3d 741, 747-748.
 {¶ 20} On the evening in question, Officer Kinlow was working the "Northeast Task Force" in a high crime area of the city of Canton. T. at 5. Officer Kinlow and his *Page 7 
partner, Sergeant Croston, decided to patrol the Victory Square Apartments because the manager had expressed concerns about ongoing incidents i.e., drug activity in the parking lot, a stabbing, and shots fired. Id. at 7. As Officer Kinlow approached the area, he observed a vehicle parked westbound in the apartment building parking lot. Id. at 8. The time was approximately 9:35 p.m. Id. at 9. Officer Kinlow observed a gentleman standing on the driver's side of the vehicle. Id. at 8. Once the individual saw the police vehicle, he fled into one of the apartment buildings. Id. Another individual standing on the passenger side of the vehicle "walked more slowly away from the vehicle as we approached." Id. Officer Kinlow "pulled up kind of behind and beside the vehicle, off to the passenger side of the vehicle." Id. at 9. As Officer Kinlow began walking toward the vehicle, the driver started to back up the vehicle. Id. Officer Kinlow tapped on the back end of the vehicle to keep from getting hit. Id. Officer Kinlow admitted he could have been in the driver's blind spot. Id. at 18-19. Officer Kinlow approached the driver to check the driver's identity and "whether they're legitimately visiting someone or if they're there for other activities and don't know any of the people there." Id. at 10. Officer Kinlow articulated he stopped the vehicle to determine "why the gentleman fled from the car, you know, after seeing the police car. And also determining if she was legitimately there, if she was visiting someone. And also to determine if she had warrants for arrest." Id. at 13. The driver did not have any identification and stated her name was "Tiana Clayton." Id. Officer Kinlow asked the driver to exit the vehicle, conducted a cursory pat down, and instructed her to have a seat in the back of the police cruiser. Id. at 14. While Sergeant Croston was dealing with the vehicle's passenger, he noticed a purse in the back seat. Id. at 15. Sergeant *Page 8 
Croston opened the purse and retrieved the driver's identification. Id. The driver turned out to be appellant herein. Id.
 {¶ 21} Given the facts sub judice, we find this was a stop. Therefore, reasonable articulable facts of criminal activity must be present. Does the observation of a parked vehicle, wherein two individuals are standing outside speaking to the occupants and one individual "flees," constitute suspicious activity? We find it does not. Therefore, our second inquiry is whether or not reasonable suspicion existed to effectuate the traffic stop. We find none existed. The alleged suspect, the driver, was on private property and was backing up. Although Officer Kinlow thought he might be struck, there was evidence to support the fact that the driver might not have seen him because of the blind spot. Also, there was no indication that the police cruiser signaled the driver to stop.
 {¶ 22} We conclude the facts in this case do not equate to reasonable articulable facts of criminal activity. Although the police may "profile" drug transactions as individuals buying from occupants in vehicles parked in parking lots, there was no independent evidence that a drug transaction was afoot, even though there had been previous complaints by the manager of past drug activity. Appellant's aunt lived in one of the apartment buildings, giving her access to the apartment complex. Therefore, there was no reasonable suspicion of a trespass. This is further bolstered by the fact that the vehicle was leaving the premises.
 {¶ 23} The officers might very well have had a good "hunch" that eventually would have been proven correct; however, hunches are not articulable facts and do not lead to reasonable suspicion of criminal activity. *Page 9 
 {¶ 24} Upon review, we find the stop violated the precepts of the Fourth Amendment. The trial court erred in denying the motion to suppress.
 {¶ 25} Assignment of Error I is granted. Assignments of Error II and III are moot.
 {¶ 26} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby reversed.
 Farmer, J. Hoffman, P.J. and Edwards, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is reversed, and the matter is remanded to said court for further proceedings consistent with this opinion. *Page 1