OPINION *Page 2 
{¶ 1} On March 3, 2008, the Stark County Grand Jury indicted appellant, Perez Dave, on one count of trafficking in cocaine in violation of R.C. 2925.03. one count of possession of cocaine in violation of R.C. 2925.11, and one count of possession of marijuana in violation of R.C. 2925.11. Said charges arose following an investigation as to why appellant was sitting on the steps leading to the second floor of an apartment complex. Canton Police Officer Kevin Sedares, who was working as private security at the apartment complex because of numerous complaints of drug activity, conducted the investigation.
 {¶ 2} On April 3, 2008, appellant filed a motion to suppress, claiming an illegal search of his person. A hearing was held on April 30, 2008. By hearing disposition sheet filed same date, the trial court denied the motion.
 {¶ 3} On May 13, 2008, appellant pled no contest to the charges. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to an aggregate term of one year in prison.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE."
 I {¶ 6} Appellant claims the trial court erred in denying his motion to suppress. We disagree. *Page 3 
 {¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 8} Specifically, appellant argues Officer Sedares lacked reasonable articulable facts to warrant a pat down search for weapons; the officer did not have any reasonable suspicion of criminal behavior. Appellant argues although Officer Sedares had the right to approach and question him as to his presence on private property, once he refused to be searched, the officer was not privileged to conduct a pat down search. *Page 4 
 {¶ 9} During the suppression hearing, Officer Sedares explained he was working private security at the apartment complex because of complaints of drug activity. T. at 6. Officer Sedares was wearing his police uniform. Id. Upon entering one of the apartment buildings, Officer Sedares encountered appellant sitting on the steps leading to the second floor. Id. Upon questioning appellant as to whether or not he lived there, appellant responded in the affirmative and then changed his story upon further questioning. Id. at 7. Officer Sedares asked and received identification, and then told appellant to stand up so he could conduct a pat down search for weapons. Id. Appellant refused, responding "You don't have any right to search me." Id. Thereafter, Officer Sedares testified to the following:
 {¶ 10} "A. I said, I'm not going to search you; I'm going to pat you down for weapons.
 {¶ 11} "And because of his answer and his demeanor, it started to make me a little nervous. At that time I called for backup.
 {¶ 12} "And I told him to get on the wall and I pulled my taser out. I had my taser in my hand. I went to pat him down. And he kept trying to bring his hands off the wall.
 {¶ 13} "At that time, after two times of telling him to put his hands on the wall, I took him over to the corner and put him on his knees and handcuffed him, because I didn't know if he had a weapon or not. I was by myself.
 {¶ 14} "When I stood him up after I handcuffed him, in his left front jacket pocket I could clearly see a bag of contraband." Id. at 8.
 {¶ 15} Officer Sedares explained his prior knowledge of "shots fired calls at the apartment building" and appellant's defensive demeanor caused him concern for his *Page 5 
safety because he was alone. Officer Sedares stated, "And I was just, I was nervous, being there by myself, and I just want to be safe. I want to go home to my family." Id. at 10.
 {¶ 16} At the conclusion of the suppression hearing, the trial court found the following:
 {¶ 17} "THE COURT: * * * Now, someone sitting on the steps, in and of itself, is not an offense. There is nothing criminal or, ah — suspicion of criminal behavior that would, ah, lead to further acts at that point in time.
 {¶ 18} "However, the officer, based on his charge, and based on the past experiences and drug activity, ah, did have a right to approach an individual to inquire of that individual as to their location. Ah, the officer was given inconsistent responses, which raised questions in the officer's mind as to whether or not this individual, ah, was appropriately there, ah, that led to the further interaction.
 {¶ 19} "Now, the, you are right that he, he cannot use the basis of a, a refusal to allow something to happen, as the basis for a search, but the question in the first instance in this case is when an officer interacts with the defendant in a setting where he is known, there is known for some drug activity, for individuals being there that aren't supposed to be there, and he gets an inconsistent answer, ah, because of the prior drug activity and because of officer safety — ah, and the case law has supported it — that they may take what may even seem to me to be unusual steps. But, certainly, they are in a position where, for officer safety, they can pat down an individual. Not necessarily search an individual, but pat down an individual for weapons for officer safety. And, *Page 6 
they've gone so far as to indicate — and it's oftentimes where people are taken out of a car, placed in handcuffs for the pat down.
 {¶ 20} "Now, that seems like, gees, that's taking them into custody, those phrases, but the case law has allowed them to actually place them in cuffs during the process of the pat down, again for officer safety. He had a basis for doing that, he had a basis, therefore, to place him in cuffs for officer safety." Id. at 34-36.
 {¶ 21} As noted by the trial court, consensual encounters are permissible; clearly Officer Sedares had the right to question appellant and request identification as to why he was present at the apartment complex.
 {¶ 22} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. In addition:
 {¶ 23} "Terry concludes that it balances the suspect's liberty interest and the public safety interest by permitting a reasonable search for weapons where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether the officer has probable cause to arrest the individual for a crime. *Page 7 
Furthermore, the officer is not required to be absolutely certain that the person is armed. Instead, the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." State v. Payne, Franklin App. Nos. 02AP-723 and 02AP-725, 2003-Ohio-4891, ¶ 17, citing State v.Andrews (1991), 57 Ohio St.3d 86.
 {¶ 24} We find sufficient evidence to support the conclusion that Officer Sedares had a reasonable suspicion there was cause to be concerned about his safety. Although much is made of the fact that the officer handcuffed appellant to conduct the pat down, we find this is not germane to the real issue of the officer's articulable facts and reasonable suspicions initiated by appellant's own evasiveness and failure to explain his presence on private property.
 {¶ 25} Upon review, we find the trial court did not err in denying the motion to suppress.
 {¶ 26} The sole assignment of error is denied. *Page 8 
 {¶ 27} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 Farmer, J. Hoffman P.J. and Edwards, J. concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1